## JACOB KUECHLER v. W. S. G. WILSON ET AL.

### No. 7162.

1. **Maps—Certificates—Archives in Land Office.**—While map sketches from the maps in the Land Office certified to be correct are competent evidence, the certificates of surveyors appended thereto are incompetent and properly were excluded.

2. **Depositions—What are Answers.** — Answer to an interrogatory was as follows: "To the tenth direct interrogatory the witness answers: There was no general reputation in the neighborhood while I resided there as to the west line of the said W. D. Walker and Alexander surveys. [Witness did not understand the first part of interrogatory 10, N. P.] He now says that it was generally understood in the neighborhood that the west line of said Walker and Alexander surveys was where the line now runs," etc. The depositions were duly sworn to and certified. *Held,* that it was not error to read the entire answer, including that within brackets.

3. **Boundaries—Charge.**—Where a location was made to take up a vacancy and calling for adjoining surveys, and there was in the general charge of the court a full exposition of the law touching boundaries, it was not error to refuse additional instructions. See examples. To give such repeated charge would give undue prominence to the evidence indicated and thereby might mislead the jury.

4. **Presumption as to Lines in Survey.** — In absence of proof that a survey sought to be identified had not been actually surveyed on the ground, the presumption should obtain that it had been so surveyed, and its calls for course and distance finally resorted to, other modes failing.

5. **Junior Survey Incompetent.**—If no marks whatever were found identifying the north line of the Smith survey (one of the lines called for), such north line could only be identified by the calls in its field notes, or those of adjacent surveys made about the same time; certainly not by a survey made many years later, and whose calls make no reference to the Smith survey.

6. **Withdrawal of Reconvention after Verdict.**—We are of opinion that the trial court should not permit a pleading to be withdrawn after verdict; but where no injury could result it is no grounds for reversal. In this case one of the defendants pleaded his title and asked to be quieted in it. The verdict was a general verdict for all the defendants. A motion for new trial by the plaintiff being urged because of the defective verdict, the plea in reconvention was allowed to be withdrawn, and the motion for new trial was overruled.

APPEAL from Falls. Tried below before Hon. J. R. DICKINSON.

This was a suit of trespass to try title, brought by Jacob Kuechler, the appellant, in the District Court of Falls County, December 14, 1886, against the appellee W. S. G. Wilson, and others. It is a question of boundary.

Appellant claimed title to the land in controversy as a part of the Esther Clark survey, which is a junior survey to those surrounding it. The defendant Wilson, to a part of the land in controversy under the James Smith one-third league patent, surveyed July 16, 1839; the defendants Glass, Pratt, and Ruble claimed title to a part of the land in controversy under the W. D. Walker patent for 1280 acres, surveyed September 22, 1838; and the defendants Spencer, Newberry, Nobles, and Watkins claimed under the George Alexander patent for 640 acres, surveyed April 30, 1852.

The defendants answered separately by pleas of general denial, not guilty, and pleas of limitation, and improvements in good faith; and the defendant Wilson pleaded in reconvention for so much of the Smith survey as the plaintiff was claiming, and asked that he be quieted in his title.

Trial was had before a jury, and resulted in a general verdict for the defendants, and judgment was entered for them generally, that the plaintiff take nothing, etc.

When the plaintiff's motion for a new trial came on to be heard, and it having been set out as a ground for new trial in the motion that "the verdict of the jury is not responsive to the charge of the court, in this, it does not dispose of or decide the issue tendered by the defendant Wilson in his plea in reconvention, nor state what or how much the said defendant is to recover from plaintiff," the court permitted the defendant Wilson to withdraw his plea in reconvention, and overruled the motion. Plaintiff excepted and gave notice of appeal.

The Esther Clark survey appears to be a location of a vacancy between several surrounding older surveys. On the south lies the Smith survey, claimed by the defendant Wilson, and the true north boundary line of that survey is the south boundary line of the Clark survey. Plaintiff claims that it is several hundred varas south of the place where the defendant Wilson claims that it is. The Walker and Alexander surveys lie east of the Clark survey, and there is a small strip in controversy on the west line of these surveys. A portion of the Clark

survey lies also north of the Alexander survey, and there is a contest also over the true location of the north line of the Alexander survey. There is a survey called the Atkinson (or. Ryan) just north of the Smith, and extending about one-third its width from the northwest corner of the Smith; but the field notes of the Ryan survey, which was surveyed in 1850, do not call for the Smith survey. There are original bearings called for in the field notes of the Smith survey; they are all gone, but there are some marks on the south line of the Ryan survey, which plaintiff contends is identical with the north line of the Smith, and consequently an extension to the west of the south line of the Esther Clark survey. Plaintiff contends that the true northwest corner of the Smith survey is on a branch of Indian Creek, and defendant Wilson contends that it is on the bank of Indian Creek, a point in due north course of the point on the branch 734 varas. The field notes of the Smith survey call for the northwest corner of the survey on "the branch of Indian Creek on two elm trees," while those in the patent and copy of those returned to the Land Office call for it on "the bank of Indian Creek on three elm trees." There was no controversy about the location of the west line of the Smith survey. No bearing trees are to be found at either corner. Taking the point on Indian Creek as the true northwest corner, the west line would be longer than the call, and taking the other corner as true, it would fall short. As to the other surveys, the controversy is whether or not a marked corner as claimed by the defendants is the true corner.

Appellant has assigned numerous errors to the exclusion and admission of evidence and the refusal of the court to give special charges asked by him, and error in the charge given. He has also assigned:

"15. · The court erred in overruling plaintiff's motion for a new trial.

"16. The verdict and the judgment are contrary to the law and the evidence."

[This statement accompanied the opinion.]

*J. A. Martin*, for appellant.—1. All maps and official reports filed in the General Land Office are archives of that office, and as such are competent evidence. Rev. Stats., art. 57, subdiv. 5; Id., arts. 3837, 3838, 3842, 3847, 2252, 2253, 2259; Morrill v. Bartlett, 58 Texas, 649.

2. It is not competent for an officer taking the deposition of a witness to give, as evidence in the case, ex parte explanation of inconsistent statements made by the witness and his conclusion as to what the witness meant.

3. What are boundaries is a question for the court to determine. And the position on the ground of any line can be as certainly fixed by having one known point and direction, or course, therefrom as by having two or more known points. Fordtran v. Ellis, 58 Texas, 248; George v. Thomas, 16 Texas, 88.

4. When the lines of a survey are not actually run and marked on the ground, a call in the grant for a marked line or corner will control a call for distance. Morrill v. Bartlett, 58 Texas, 649; Newsom v. Pryor, 7 Wheat., 8–13.

5. An office survey calling for older contiguous surveys as its boundaries will appropriate all the land surrounded by such older surveys and called for in its field notes. Moore v. Reiley, 68 Texas, 670; Lilly v. Blum, 70 Texas, 704; Boon v. Hunter, 62 Texas, 588; Woods v. Robinson, 58 Texas, 655; Buford v. Gray, 51 Texas, 331; Swisher v. Grumbles, 18 Texas, 164.

*Goodrich & Clarkson,* for appellees.—The law presumes that the surveyor George Green did in fact make an accurate and careful survey of the land described in the Esther Clark field notes, and that the courses and distances stated in the patent will correctly point out the locality of the objects called for in the patent as the boundaries; and in this case the burden of proof is on the plaintiff to show that the call from the Ryan northeast corner south 30 degrees east 361 varas to the Smith line; thence north 60 degrees east 2186 varas to the Smith northeast corner; thence north 30 degrees west 4210 varas to northwest corner of G. Alexander survey, are incorrect. Clark v. Hills, 67 Texas, 142; Phillips v. Ayres, 45 Texas, 607; Stafford v. King, 30 Texas, 257.

GARRETT, PRESIDING JUDGE, *Section B.*—Appellant's first assignment of error relates to the exclusion of the certificates of James Howlett and G. B. Erath, attached to the sketch of surveys from the Land Office offered in evidence by him, and admitted except as to the certificates, which were excluded on objection by the defendants that they were not competent evidence. The certificate of the Commissioner of the Land Office attached to the sketch was, "that the above is a correct copy of sketch file No. 7, Bell County, now on file in this office," and was admitted with the sketch. Those excluded were: "I certify the above representations to be correct and the connections to be as represented. Caldwell, 6th August, 1850. [Signed] G. B. Erath." And, "State of Texas, District of Milam: I do certify the above sketch is a correct representation of the survey returned to this office by W. W. Oxsheer, deputy surveyor for said district. Given at Caldwell, this 6th day of August, 1850. [Signed] James Howlett, district surveyor." The map or sketch includes the Smith and the Walker surveys and the vacant land north of the Smith, and the configuration of the surveys tends to sustain plaintiff's contention as to the true position of the northwest corner of the Smith.

As an archive of the General Land Office, the copy of the map duly certified by the Commissioner was proper evidence; but the certificates of the surveyors attached thereto were inadmissible to prove any dis-

puted fact, and were properly excluded by the court. 1 Whart. on Ev., sec. 120. That the representations on the map were correct was the opinion of the surveyor. .

The second assignment of error is: "The court erred in permitting the defendants to read in evidence to the jury, over plaintiff's objection, the following words, to-wit: 'Witness did not understand the first part of intgy. 10, N. P.,' occurring in the answer of the witness D. D. Nelson to the tenth interrogatory propounded by defendants, more fully set out and explained in plaintiff's bill of exceptions."

This occurred in taking the deposition of the witness Nelson, and was in reply to an interrogatory, it must be presumed, as none appears in the bill of exceptions, as to where, from general reputation in the neighborhood, the Alexander and Walker lines ran. His answer as written by the notary public was: "To the tenth direct interrogatory witness answers: There was no general reputation in the neighborhood, while I resided there, as to the west line of the W. D. Walker and Alexander surveys. [Witness did not understand the first part of interrogatory 10, N. P.] He now says, that it was generally understood in the neighborhood that the west line of said Walker and Alexander surveys was where the line now runs," etc. The witness signed the deposition, and the officer certified that he subscribed and swore to the same. The statement contained in the answer is the sworn deposition of the witness, and we do not think it was error to admit it in evidence. '

Appellant's refused charges, which are the basis of the third and fifth errors assigned, are as follows:

1. "If they (the jury) believe from the evidence in this case that the southwest corner or the south line of the Ryan (or Atkinson) survey is a marked corner or line, and has been found and identified on the ground, and that the north line of the James Smith one-third league is identical or coincident with the south line of said Ryan or Atkinson survey, then the call in the Esther Clark patent from the northeast corner of the Ryan survey south 30 degrees east to the southwest corner of the same in the north line of the James Smith one-third league survey will control the length of said line as given in the patent, and the said Clark will extend south to the north line of said Smith, in the absence of any other call or fact indicating to your minds with more certainty the true position of the south line of the Clark survey.

3. "If they (the jury) believe from the evidence in this case that the patent or original field notes of the James Smith one-third league survey called for a bearing tree at the northeast corner of the same, and that at the time said survey was originally made such tree actually existed and could be found and identified on the ground, then, in contemplation of law, the north line of said Smith survey was a marked line, and the call in the Esther Clark patent for said north line and

northeast corner would control the distance given in said Clark patent, and said north line of the Smith would be the south line of the Clark in the absence of any other call or fact more certainly indicating to your minds the true position of said Clark south line; and in this connection you are charged that when objects, natural or artificial, are called for in the field notes of official surveyors, the law presumes that such officers report their work truthfully and correctly—that such objects actually existed on the ground as called for; and this presumption continues until the contrary is proved."

There was no call in the field notes of the Ryan survey for the Smith survey at all; and it was made about eleven years later. Nor was there evidence of any marked line or corner on the line of the Smith survey as claimed by the plaintiff. The court in its charge to the jury instructed them that there was no testimony tending to show that the lines of the Esther Clark survey were marked upon the ground, and in the absence of such testimony they would, as to the Walker and Alexander surveys, find the true position of their lines where the Clark abutted upon them, and that these would be the true boundaries; and as to the James Smith survey, they should find whether its north line was run, or when plaintiff's location was made it was an established or marked line; that in either event, and the locality of the line could be established, it would be the proper boundary as between the Smith and Clark; and this, although the original marks had been effaced. The jury were also told, that if no lines or corners of the surveys could be found or identified on the ground they should look to the field notes of adjacent surveys in evidence before them, and if they could be identified they should begin on them and locate the lines of the surveys in question by running course and distance; but that this should only be done when the boundaries of a survey could not be satisfactorily ascertained by its own calls and field notes. The charge of the court was full and clear on the proposition that the Clark survey would extend to the north line of the Smith survey, and there was no error in refusing the special charges numbered 1 and 3, if, indeed, they were not objectionable as being argumentative and not called for by the facts.

There was no error in the refusal of the second special instruction requested by the plaintiff—to the effect that if the jury believed from the evidence that the south line of the Atkinson (or Ryan) survey was a marked line, and that the north line of the Smith one-third league was identical with the same, then the south line of the Clark survey would be coincident with the north line of said Smith survey—for the same reason that it was proper to refuse the first special instruction requested, and it would also tend to confuse and mislead the jury by giving undue importance to the south line of the Ryan survey. The fact that the south line of the Ryan survey was a defined and marked line,

and that it was coincident with a line which the surveyors in 1850 (eleven years after the survey of the Smith one-third league was made) may have supposed to be the north line of the Smith survey, although the field notes do not call for the Smith survey, was but a circumstance in evidence to aid in identifying the north line of the Smith, and it should not be given undue prominence in the charge.

The sixth assignment of error is: "The court erred in refusing to give the special charge number 4 asked by plaintiff, to the effect that if they believed from the evidence that it was the intention of the State by its patent to Esther Clark to grant to her all the unappropriated land between the surrounding or abutting surveys named in the patent, then the lines of such surveys would be the lines of the Clark."

There was no error in refusing this charge, because it was fully covered by the charge of the court already given. The jury were fully instructed that the unappropriated land between the surrounding surveys was included in the patent to Esther Clark, and that it was their duty to determine the boundaries of the Smith, Walker, and Alexander surveys as the boundaries of the Clark survey.

Special instructions numbered 5 and 6 requested by the plaintiff were as follows:

"5. If, when a survey was originally made, its lines and corners were actually run and marked upon the ground and fixed by objects natural or artificial, so that a short time after such survey was first made its lines and corners could be traced and identified by the objects called for in the field notes, then in contemplation of law such lines and corners are marked lines and corners for all time to come, and the fact that after many years the objects called for decay or become obliterated and can no longer be found, does not change the rule.

"6. If they (the jury) believe from all the evidence in this case that the lines and corners of the W. D. Walker and George Alexander surveys were actually run and marked upon the ground by the original surveys, then it is their duty, first, to determine if possible from all the evidence before them where on the ground the west lines and corners of said surveys were run and established by said original surveys, and if they can ascertain this fact, to establish said lines and corners as they were first established. If they can not find any traces of the original survey along the west lines of said Walker and Alexander, and on the north line of said Alexander, then they will establish said west lines and north line by course and distance from some known or identified object called for in the field notes of said surveys."

These are made the basis of the seventh assignment of error. The court had already instructed the jury in effect that they were to find whether the lines of these surveys were ever established or marked lines, and if they were and could be identified they would be the proper boundaries of the Clark survey, although the original marks had been

effaced. Because the jury had already been fully instructed as to the points embraced in these requested instructions, there was no error in refusing them.

The ninth assignment of error is: "The court erred in the fifth paragraph of its charge, wherein the jury are instructed that if the north line of the Smith survey is an open line, or if its location on the ground can not now be shown, the south line of the Clark survey must be fixed by the other calls in the Clark grant; because the jury should have been instructed, under the circumstances of this case, that the south line of the Clark must be identical with the north line of the Smith, wherever they might fix that under proper instructions."

That portion of the charge complained of is as follows: "As to the Smith survey, you will find whether, when its north line was run or when plaintiff's location was made, it was an established or marked line, and if you find either to be the case, and the locality of the line can now be identified, such line will be the proper boundary as between the Clark and Smith surveys, and that, too, although the original marks have been effaced. But if the north line of the Smith is an open line—that is, a line through the prairie with no marks upon it—or if it was once a marked line but its location on the ground can not be shown, the proper south line of this part of the Clark survey must be fixed by the other calls in the grant—that of the Clark."

When the junior survey has not been made upon the ground, and the calls are for the surrounding surveys, the lines of such surveys will be the lines of the junior survey. But the jury had been fully instructed as to every method to which they might resort in order to fix the north boundary line of the Smith survey; and having exhausted every method to ascertain the boundary without being able to identify it, we think that in the absence of proof that the Clark survey had not been actually surveyed on the ground, the presumption should obtain that it had been so surveyed, and its calls for course and distance should be finally resorted to.

There is no proof in the record that the Clark survey was not actually run out on the ground, and there is some, such as a discrepancy between the length of some of the lines of the Clark and those of the contiguous surveys, which would indicate that some of the lines at least had been run. The assumption by the court in its charge that the Clark survey had not been actually made upon the ground, was made no doubt from the fact that all the vacancy between the older surveys seemed to have been appropriated by it. The surveyor Green, who made the Clark survey and who was present and aided in making the original survey, afterward pointed out as the northwest corner of the Smith survey the corner claimed by the defendant Wilson, and the distance from the northeast corner of the Ryan survey to the north line of the Smith as claimed by the defendant is 387 varas, while the dis-

tance called for in the Clark field notes is 361 varas.   We think that in consideration of the fact that the jury had been instructed by the court in effect to identify if possible the north boundary line of the Smith survey as the south boundary of the Clark, and fully instructed as to how they should do so, and of the further fact that there is evidence tending to show that some of the lines of the Clark survey had been made on the ground, and especially the one in question, the charge of the court complained of was not erroneous, or if error immaterial.

The tenth assignment of error is:  "The court erred in the seventh paragraph of its charge concerning the lines and corners of the Walker and Alexander surveys, in not limiting the jury in their search for the marked lines and corners to such marks as were made in the original survey, and the identification of lines and corners to such as were made in the original survey."

Upon an examination of this paragraph of the charge we think the objection is not well taken; for while the paragraph itself may not limit the jury in their search to the original lines and corners, still, that is the effect of it, and especially when taken in connection with the other paragraphs of the charge.

The twelfth paragraph of the charge complained of under the twelfth assignment of error was correct.   It was as follows:  "With reference to this branch of the case (the issue between plaintiff and defendant Wilson), you are further instructed, that if the locality of the Smith north line can not now be identified by marks on the ground, but you find that it was once a marked and established line, and that it can still be identified by other calls in the grant, or by calls or field notes of adjacent surveys made about the same time with it, this would be sufficient to show where the north line of the Smith is, as that expression is meant to be used in the paragraph of the charge marked 5."

The objection is that it was upon the weight of evidence, and virtually excluded from the jury the evidence introduced as to the locality of the Ryan survey made eleven years later.   It gave the correct rule for ascertaining the line in the absence of marks on the ground, and the only purpose of the introduction in evidence of the field notes of the Ryan survey would be to corroborate any marks or indications found on the ground tending to show that the Smith line was identical with it.   But if no marks whatever were found, it would only be proper to resort to the calls of the Smith survey, or those of adjacent surveys made about the same time; certainly not to a survey made eleven years later, and whose calls made no reference whatever to the Smith survey. The whole trouble may have grown out of a mistake in the Ryan survey.

It is contended that the verdict was not responsive to and does not dispose of all the issues made by the pleadings of the parties and submitted by the charge of the court.   The defendant Wilson had

pleaded in reconvention to be quieted as to his title to the land claimed by him, and the court charged the jury to find with reference to this issue, but the verdict was a general verdict in behalf of the defendants. When appellant's motion for a new trial was presented the court permitted the defendant Wilson to withdraw his plea in reconvention and overruled the motion. We are of the opinion that the trial court should not permit a pleading to be withdrawn after verdict; but do not think the error was such as the plaintiff could complain of in this case, as there could be no possible injury to him. It has been held, in Johnson v. Newman, 35 Texas, 166, that a failure to find on such an issue, and where there was a general verdict "for the defendants," was a finding merely that both parties had failed to make out their titles, and that a general judgment that the plaintiffs take nothing was the judgment that should have been rendered. Such was the judgment rendered in this case.

The fifteenth and sixteenth assignments of error, that "the court erred in overruling plaintiff's motion for a new trial," and "the verdict is contrary to the law and the evidence," are too general to require notice by us.

We are of the opinion that the record does not disclose any error for which the judgment of the court below should be reversed, and report the case for affirmance.

*Affirmed.*