HANOVER FIRE INS. CO. v. NASH et al.

No. 2913.

Court of Civil Appeals of Texas. El Paso.

Jan. 4, 1934.

Rehearing Denied Jan. 25, 1934.

E. G. Senter, of Dallas, for plaintiff in error.

John Zumwalt and Sullivan & Wilson, all of Dallas, for defendants in error.

HIGGINS, Justice.

For a recited consideration of $1 and love and affection, J. E. South conveyed to Mrs. Hattie Nash, by general warranty deed, certain land in Dallas county, reserving to the grantor a life estate. Mrs. Nash and her husband, J. A. Nash, moved upon the land, occupying with South a house upon the same. Discord soon arose between South and the Nashes and the latter removed from the premises leaving South in possession. Thereafter the Hanover Fire Insurance Company issued to Mrs. Nash a policy insuring the house against fire. The policy is referred to as a farm policy and was issued by Floyd West & Co., general agents of the company, for Texas. The policy was issued upon a written application bearing the signature of Mrs. Nash. She was solicited to take out the insurance by one A. W. Landers, whom the jury found to be the agent of the insurance company and authorized by the general agents to solicit such insurance for said company. Mrs. Nash's signature to the application for the insurance was affixed by Landers by her authority. The house was destroyed by fire and this suit was brought by Mrs. Nash and husband to recover upon the policy. Upon special issue findings, judgment in her favor was rendered.

The policy contains the usual stipulations avoiding the same if the insured has concealed or misrepresented, in writing or otherwise, any material fact or circumstance concerning the insurance or the subject thereof; or if the interest of the assured be not truly stated therein; or if the interest of the insured in the property be other than unconditional and sole ownership; or if the subject of insurance be a building on ground not owned by the insured in fee simple.

In behalf of the plaintiff in error it is urged a peremptory charge in its favor should have been given because of misrepresentations by Mrs. Nash in her application concerning her interest and breach of the stipulations concerning sole and unconditional ownership, etc.

When an insurer, at the time of the issuance of a policy, knows of existing facts which, if insisted upon, would invalidate the contract from its inception, such knowledge constitutes a waiver of the right of avoidance because of such facts, and an estoppel arises which precludes the insurer from setting up such facts in avoidance of the contract. Many authorities to this effect could be cited. Some of them are noted in St. Paul, etc., Ins. Co. v. Kitchen (Tex. Com. App.) 271 S. W. 893, where such principle was applied.

The evidence shows that the agent Landers, prior to the issuance of the policy, was delivered the deed from South under which Mrs. Nash acquired only an interest in remainder; that he inspected the same, told Mrs. Nash it was all right and she could insure the property. He knew the Nashes had moved away and that South was in possession. He also had a conversation with South prior to sending in the application which put him upon notice of the rights of South in the property. The jury found that prior to the execution of the application for the insurance Mrs. Nash delivered to Landers her deed from South, and South also advised Landers that he claimed an interest in the property.

The knowledge of these facts, if imputable to plaintiff in error, operates as a waiver of those representations and stipulations relating to the interest of Mrs. Nash and estops appellant from insisting upon an avoidance of the contract because Mrs. Nash had only an estate in remainder after the termination of the life estate of South. St. Paul, etc., Ins. Co. v. Kitchen (Tex. Com. App.) 271 S. W. 893; Southern Underwriters v. Jones (Tex. Civ. App.) 13 S.W.(2d) 435; American, etc., Ins. Co. v. Bailey (Tex. Civ. App.) 3 S.W.(2d) 539; Springfield, etc., Ins. Co. v. Brown (Tex. Civ. App.) 13 S.W.(2d) 916; Sun Life Ins. Co. v. Phillips (Tex. Civ. App.) 70 S. W. 603.

The evidence shows, and the jury found, that Landers was authorized by the general agents to solicit such insurance. The evidence also shows he inspected and appraised the house; the policy was sent to him for delivery. He collected part of the premium in cash; accepted notes for the balance; sent the cash and notes to the general agents after deducting his commission. In fact, Landers, according to his testimony, seems to have had all of the authority ordinarily possessed by local fire insurance agents except authority to sign the policies and issue same without previous submission to the general agents for approval.

The authorities in this state, and the great weight of authority in other jurisdictions, support the view that knowledge of such an insurance agent is imputable to his principal. Volume 5, and supplemental vol. 8, Cooley on Ins. p. 4049, in both volumes; Southern Mut. Fire Ins. Co. v. Mazoch Bros. (Tex. Civ. App.) 291 S. W. 257; Southern Underwriters v. Jones (Tex. Civ. App.) 13 S.W.(2d) 435; Southern Travelers' Ass'n v. Boyd (Tex. Civ. App.) 1 S.W.(2d) 446; Id. (Tex. Com. App.) 12 S.W.(2d) 183; Law v. Texas, etc., Ins. Co. (Tex. Com. App.) 12 S.W.(2d) 539; Id. (Tex. Com. App.) 16 S.W.(2d) 277; Lee v. Mutual, etc., Ass'n (Tex. Civ. App.) 47 S.W.(2d) 402.

We, therefore, hold plaintiff in error is estopped to avoid the contract because Mrs.

Nash had only an estate in remainder in the house and the land upon which it is situate.

In this connection plaintiff in error also attacks the title of Mrs. Nash to the estate in remainder upon this ground: That as a part of the consideration for the deed from South to Mrs. Nash it was collaterally agreed that she and her husband would move upon the place, support and care for South the rest of his life. It is asserted Mrs. Nash and husband breached this agreement, whereby her title failed.

We need not inquire as to the effect, if any, of such alleged breach upon Mrs. Nash's title. Certainly it did not operate, ipso facto, to avoid the same and divest her title. If it be conceded that South could have successfully maintained an action to cancel and rescind his conveyance, nevertheless, until this was done Mrs. Nash held title to the estate in remainder. Her title was so completely vested in her that she could not be divested of it except in some manner prescribed by law. The stipulations in the policy relating to ownership "do not import that insured can show an indefeasible title, free from defects and good against all persons, or even a valid legal title at all, and an outstanding naked legal title, or defects in the title or title deeds of insured, if he claims under a deed or other evidence of title purporting to invest him with an estate in fee simple, do not constitute a breach or avoid the insurance where the policy is conditioned on any of these statements." Miller v. Alliance Ins. Co. (C. C.) 7 F. 649, 650; Hough v. City Fire Ins. Co., 29 Conn. 20, 76 Am. Dec. 581; East Texas Fire Ins. Co. v. Crawford (Tex. Sup.) 16 S. W. 1068, 1069.

The authorities cited support the view that the alleged breach of the collateral agreement of Mr. and Mrs. Nash does not present any ground for avoidance of the contract upon the theory that the stipulations concerning Mrs. Nash's interest and ownership were not as stated in the policy. We so hold.

Another contention is that there was a concealment by Mrs. Nash of material facts affecting the risk, in that South was holding "wild parties" in the house and had evil associates visiting him there. Mrs. Nash's testimony shows she informed Landers concerning these matters, and this raises an issue of fact which would preclude a peremptory charge in plaintiff in error's favor.

The court submitted a number of questions relating to this phase of the defense. These questions were not answered. The court in its judgment found that in view of the evidence the questions should not have been submitted and the failure of the jury to answer the same therefore immaterial. We sustain this view and overrule those assignments complaining of the failure to answer such questions. The rule with reference to concealment in the absence of inquiry is stated in 3 Couch on Insurance, § 776, at page 2517, as follows: "This is in keeping with the many authorities which support the rule that the concealment must, in the absence of inquiries, be not only material, but fraudulent, or the fact must have been intentionally withheld, it being held, even under English law, that if no inquiries are made, and no fraud or design to conceal enters into the concealment, the contract is not avoided. In other words, concealment implies that something of importance has been knowingly withheld." See, also, 26 C. J. § 192, p. 156.

There were no inquiries made concerning these matters, and the evidence raises no issue of a fraudulent or intentional withholding of information concerning the matters inquired about in such questions. The questions should not have been submitted.

Error is assigned to the refusal to permit South to intervene in the suit. This presents no error. South was not a party to the contract sued upon and had no interest in the proceeds of the policy. His petition in intervention states no cause of action, and if it did the refusal to permit his intervention is a matter of no concern to plaintiff in error.

A number of assignments complain of rulings upon evidence. None of them show any reversible error. Some of the evidence admitted was irrelevant and immaterial, but it was offered in rebuttal of irrelevant issues injected by plaintiff in error.

All assignments and propositions have been considered, and no material error is shown except an excessive allowance of interest, a matter raised for the first time in a supplemental brief.

The policy provides that proof of loss should be furnished in 91 days after the fire and the loss should not become payable until 60 days thereafter. The fire occurred November 2, 1930, resulting in a total loss. The plaintiffs allege proof of loss was made in due time.

Plaintiff in error asserts there is no evidence to show when the proof of loss was furnished. This statement is not challenged by appellee. Interest was allowed from the date of the fire.

In the recent case of American Central Ins. Co. v. Terry, 26 S.W.(2d) 162, 164, Justice Sharp, of the Commission of Appeals, said: "The rule is well settled in this state that when the loss is total, it is a liquidated demand, and proof of loss is not necessary. Suit can be maintained on the policy as on any other liquidated demand, if the property on which the policy was issued was real property, and that it had been totally destroyed. Queen Ins. Co. v. Jefferson Ice Co., 64 Tex. 582." The Supreme Court expressly ap-

proved the holdings of the Commission on the questions discussed in its opinon.

This ruling seems not to be in harmony with Delaware, etc., Ins. Co. v. Brock, 109 Tex. 425, 211 S. W. 779, and Fire Ass'n, etc., v. Strayhorn (Tex. Com. App.) 211 S. W. 447.

But American Central Ins. Co. v. Terry, supra, is the latest expression of the view of the Supreme Court with reference to the necessity of proof of loss in the case of a house totally destroyed by fire, and we feel impelled to follow this last expression of the Supreme Court, as the Amarillo Court did in Security Ins. Co. v. Vines (Tex. Civ. App.) 48 S.W.(2d) 1017.

The record does not disclose when plaintiff in error denied liability (see Delaware, etc., Ins. Co. v. Brock, supra), and no proof of loss being necessary, interest should run from the sixtieth day after the loss. East Texas, etc., Ins. Co. v. Brown, 82 Tex. 638, 18 S. W. 713, and Delaware, etc., Ins. Co. v. Brock, supra.

The judgment will be corrected in this respect and affirmed.

 The amount involved by such correction is small. It should have been called to the attention of the trial court in the motion for new trial. If this had been done, the correction would doubtless have been made in that court. The costs of the appeal will therefore be taxed against plaintiff in error.

Corrected and affirmed.