SUPREME LODGE UNITED BENEVOLENT ASSOCIATION v. BERTA LAWSON.

Decided December 10, 1910.

**1.—Life Insurance—Payment of Premium—Waiver.**

In an action upon a policy of life insurance, the defense being that the first premium had not been paid as required and stipulated by the contract of insurance, evidence considered, and held sufficient to support a finding that the secretary of the local lodge of which the insured was a member, had the authority to and did in fact waive the payment of said premium, and that the plaintiff was entitled to recover.

**2.—Trial—Exclusion of Evidence—Harmless Error.**

The exclusion of evidence bearing upon an issue which was not submitted to the jury, cannot be cause for reversal.

**3.—Same—Refusal of Charge.**

A requested charge which ignores material issues is properly refused.

Appeal from the District Court of Tarrant County. Tried below before Hon. R. H. Buck.

*N. J. Wade,* for appellant.—The deceased, George Lawson, never became a member of the United Benevolent Association and entitled to participate in its benefit fund, for the reason that he failed to pay the

Vol. LXIII Civil-18.

first or current monthly assessment while in good health, said assessment being that of May, 1909, and he at the time of the payment, May 20, 1909, being seriously ill and in a dying condition. Brock v. United Moderns, 81 S. W., 340; Security Mutual Life Insurance Company v. Calvert, 87 S. W., 889; Giddings v. Northwestern Mutual Life Ins. Company, 102 U. S., 112; Piedmont v. Ewing, 92 U. S. Sup., 377; Whiting v. Ins. Co., 129 Mass., 240; Whitley v. Ins. Co., 71 N. C., 480.

By the terms of the contract sued upon, which consists of the application, the certificate and the constitution and laws of the appellant, it is made a condition precedent to the validity of any certificate that the holder shall have paid his first assessment while in good health; and if at the time of the payment of his first assessment he is seriously ill, or if he had had any serious illness subsequent to his medical examination, the payment of his first or current month's assessment under these circumstances would not have the effect of putting his insurance in force, although his certificate may have been delivered. Giddings v. N. W. Mutual, 102 U. S., 112; Piedmont v. Ewing, 92 U. S. Sup., 377; Whiting v. Ins. Co., 129 Mass., 240; Whitley v. Ins. Co., 71 N. C., 480.

It would be the duty of George Lawson, the deceased, or his agents to follow up his application and inform himself as to when and how his current or first monthly assessment had been paid; and no duty rested on appellant to give him any actual notice at any time, either of the levy or his failure to pay the assessment. Moore v. Supreme Assembly, 93 S. W., 1079; United Moderns v. Pike, 76 S. W., 774; Giddings v. N. M. Mutual, 102 U. S., 112; Warner v. Woodmen, 96 S. W., 222.

The payment of the May dues of the deceased George Lawson on the night of May 20th was a fraud on appellant and was absolutely without consideration and void under the very terms of the contract here sued upon, and did not have the effect of putting said certificate in force or giving the deceased George Lawson any interest whatever in the benefit fund of appellant, he at the time being seriously ill and in a dying condition, so that he died three days later. Brock v. United Moderns, 81 S. W., 340; Security Mutual Life Ins. Co. v. Calvert, 87 S. W., 889; Giddings v. Northwestern Mutual, 102 U. S., 112; Piedmont v. Ewing, 92 U. S. Sup., 377; Whiting v. Ins. Co., 129 Mass., 240; Schwartz v. Ins. Co., 21 Minn., 215; Whitley v. Ins. Co., 71 N. C., 480.

*George T. Cope* and *Capps, Cantey, Hanger & Short,* for appellee.

DUNKLIN, ASSOCIATE JUSTICE.—Mrs. Berta Lawson, plaintiff, recovered judgment against the Supreme Lodge United Benevolent Association, defendant, upon an insurance policy issued by the defendant upon the life of her husband, George Lawson, and the defendant has appealed.

The policy was in favor of George Lawson and his wife, Berta Lawson, and stipulated that upon the death of either of the beneficiaries

the insurer would pay two thousand dollars to the survivor. It was delivered to S. M. Lawson for and on behalf of the insured by the secretary of defendant's local lodge in Fort Worth on March 20, 1909. George Lawson died on May 24, 1909, of typhoid pneumonia having been confined in the hospital for three weeks prior to his death and was very sick on May 20th. At the time of the delivery of the policy S. M. Lawson gave to the secretary a check of the Fort Worth Creamery, a private corporation, upon the State National Bank, for the amount of the first premium due on the policy, this premium being for the month of April, and upon receipt of the check the secretary issued and delivered a receipt reciting payment of the first premium by the insured. At the time the check was given and the policy delivered George Lawson was in good health. He was then an employee of the Fort Worth Creamery Company and the amount of the check was deducted from the salary due him by that company.

Miss Pankey, the local secretary to whom the check was delivered, testified that it was presented to the bank for payment several times, and having been dishonored, she returned it to the maker, and that she had never received any money for the first premium. However, on May 20th she accepted payment from Ben Lawson of the amount due as a premium on the policy for the month of May, and at that time executed a receipt to the insured reciting that the payment was accepted as payment of the premium for the month of May. She testified that when this receipt was issued she told Ben Lawson that the check for the first premium had not been paid and requested a return of the receipt therefor; that the understanding between herself and Ben Lawson at that time was that the insured had had no protection for the month of April; and further that at the time she accepted payment of the May premium she did not know of George Lawson's illness.

S. M. Lawson and Ben Lawson were brothers of George Lawson and were both officers of the Fort Worth Creamery, Ben Lawson being its secretary and the officer who signed the check for the first premium. He testified that at that time the Fort Worth Creamery was doing a business of about thirty or forty thousand dollars a year; . . . that it had never issued a check that remained unpaid and that it is still doing business. He testified that when the premium for May was paid Miss Pankey "then said something to me about the check for the first month's dues; she told me that the previous check had not been paid; that she had sent it to the bank and they had returned it on account of insufficient funds; I told her that if that was the case that it would be paid if it was presented later; she also said that the check had been sent back to us; I told her I had not seen the check, and that if it did not show up and if it was lost, I would issue her a duplicate check or pay her the money either one. . . . When I told Miss Pankey that if the first check was lost I would issue her a duplicate check or give her the money, she did not say which she would want. . . . I did not know until I paid the May dues that the

check for the April dues had not been paid, or that the secretary claimed that that check had not been paid; I presumed the check had been paid until she told me that it had not. . . . Unless the check has been paid right lately it has never been paid; the last time I. checked my bank account it did not show up; I don't know whether it has been paid since then or not; it was still out the last time I checked my bank account. Yes, I swear that I never received this check back from Miss Pankey; I know that I never received it back."

Miss Pankey testified that she had never seen George Lawson and according to her testimony she had no communication with him con-cerning the policy nor any premiums thereon.

Plaintiff, Mrs. Berta Lawson, testified that she had never received any notice that the policy was or would be canceled for non-payment of any premiums and no evidence was introduced to show that George Lawson had any notice that the check for the first premium had not been paid.

The policy contained the stipulation, "This contract is mutually entered into by and between the Supreme Lodge and George and Berta Lawson on condition that premiums will be paid according to its regu-lations, terms and rates and in full compliance with its constitution, laws and rules of the United Benevolent Association." The application for the policy signed by the insured contained the following: "It is fully agreed that membership shall not begin, and benefit certificate issued under this contract shall not be binding or in force and effect, until this application has been accepted by the Supreme Office and all required fees and the first monthly payment has been made to said Association."

One of the by-laws of the order required a certain obligation to be taken by an applicant before becoming a member of the order and contained this stipulation: "And if any member by mistake or other-wise receive his certificate before he shall have been thus obligated, and having paid his current month's assessment the same shall not be bind-ing on the order until he shall have been thus initiated or obligated and shall have paid his current month's assessment."

By the terms of another by-law a member was given until the last day of the current month to pay assessments due for that month, and, by a provision of the charter, assessments were levied during the nat-ural life of the member. Upon the trial plaintiff in open court tendered to defendant the amount of the April premium and defendant tendered to plaintiff the amount of the May premiums and both tenders were declined.

The following is the entire charge given to the jury by the trial court:

"You are instructed that if you believe from the evidence that Miss Pankey as the secretary of the Fort Worth lodge of the defendant as-sociation delivered the certificate sued on in this case to S. M. Lawson for the deceased, George Lawson, and delivered at the same time the receipt for all the dues, which were required to be paid by the deceased George Lawson, and accepted in payment of the same, and agreed to

accept in payment of the same, a check drawn by the Fort Worth Creamery Company on the State National Bank of Fort Worth, Texas; and you furthermore believe from the evidence that said receipt so delivered at said time was intended and agreed to cover the April dues; and you furthermore believe from the evidence that the May dues to said association which were due by the deceased, George Lawson, were paid to the said Miss Pankey as secretary of said local lodge, and received by her as such secretary, at the date testified to by her, and that she gave the receipt offered in evidence for such dues covering the May assessment or premium; and you further believe from the evidence that between the date of the delivery and receipt by Miss Pankey of the first check given by the Fort Worth Creamery Company in March, 1909, and the date of the receipt by her of the May dues, the defendant gave to the deceased George Lawson no notice of the non-payment of said first check; or no reasonable opportunity to pay the amount of his dues as might have been included in said Fort Worth Creamery Company check, and made no demand upon the said George Lawson for the payment of the dues and assessments which were included in the check of the Fort Worth Creamery Company so given in March, 1909, you will find a verdict for the plaintiff for the amount of the said certificate sued upon with interest at the rate of 6 per cent per annum from the 1st day of October, 1909. And if you do not so find from the evidence you will find for the defendant United Benevolent Association.

"The plaintiff is required to make out her case by a preponderance of the evidence, and unless you find and believe she has done so, you will find for the defendant.

"You are the exclusive judges of the credibility of the witnesses, the facts proved, and the weight to be given to the evidence, but the law you will receive from the court as herein given you in charge, and be governed thereby."

The following announcement appearing in Cyc. is sustained by the authorities: "The prepayment of the first premium as a condition precedent to the taking effect of a policy of life insurance, whether the condition is express or implied, may be waived by the company or its authorized agent, and a waiver may be shown by parol, notwithstanding prepayment is required by express stipulation in the policy or application. Such condition is waived, assuming that the agent has authority express or implied to bind the company, by an express agreement that the premium or a part thereof may be paid at a future date, or by taking a due bill therefor from the insured, or his promissory note, or by the unconditional delivery of the policy to the insured without prepayment of the premium, or by refusing a sufficient tender of the amount of the premium." 25 Cyc., 726. To the same effect see Provident Savings Life Assurance Society v. Oliver, 53 S. W., 594, 22 Texas Civ. App., 8, in which writ of error was refused by the Supreme Court; Metropolitan Life Insurance Co. v. Gibbs, 78 S. W., 398, 34 Texas Civ. App., 131.

"As a rule, a general agent has authority to waive the implied con-

dition or an express stipulation in the application or policy that the policy shall not take effect until the first premium has been paid, but the agent's authority in this respect may be limited by an express provision in the application and policy. In general, an agent having authority to receive the first premium and deliver policies, has implied authority to waive prepayment." 25 Cyc., 728-9.

Neither in the application, nor in the policy, nor in the charter or by-laws of the company was there any express provision denying to the secretary of the local lodge authority to waive prepayment of the first premium due on the policy. One of the by-laws of the defendant order reads, in part, as follows: "The duties of a secretary of a subordinate lodge shall be to attend all meetings of the lodge, call the roll of officers, and note absentees; keep a correct minute of all the proceedings; collect and receipt for all dues of the subordinate and supreme lodges; keep a correct list of all members; furnish blank applications to those desiring membership; turn all lodge funds in to the lodge treasury; remit all Supreme Lodge funds to the Supreme Secretary, making the remittances payable to the Supreme Treasurer; promptly forward all applications for membership and all medical examinations to the Supreme Medical Examiner; promptly deliver all benefit certificates to the members, and immediately upon the death of any member, or upon the request of any member who has become permanently disabled or reached the age limit under the law, to notify the Supreme Secretary, and upon receiving blank proofs to have them properly filled and return to the Supreme Secretary; do and perform such other duties as usually devolve upon secretaries of deliberative bodies."

No evidence was introduced showing authority in any other agent of the defendant company to collect the premiums on policies, and the by-law quoted above conferring such authority upon the local secretary of the lodge is certainly general in its terms. The evidence showed that E. S. Royall, the Supreme President of the United Benevolent Association, resided in Fort Worth, the place of residence of the secretary of the local lodge and of the insured, and no evidence was introduced to show that he, or any other officer or agent of the defendant, ever repudiated any act of the local secretary relative to the policy in controversy. Nor was there any evidence to show that they were not fully informed of all the acts of the secretary relative to the delivery of the policy to the insured and the collection of premiums thereon. As notice to an agent of facts within the scope of his employment is *eo instanti* notice to his principal, it must be held, at all events, that the secretary performed her duties under defendant's by-laws and informed the Supreme Lodge of the delivery of the policy, of the receipt of the Fort Worth Creamery Company's check in payment of the premium, and also that she delivered to the defendant company the May premium promptly after its collection. The evidence is uncontroverted that the amount of the first premium was deducted from the salary due George Lawson by his employer, that the secretary of the local lodge accepted a check of his employer in lieu of a cash payment, and the cir-

cumstances in evidence are sufficient to support the conclusion that he knew nothing of the failure of his employer to pay the check, and that at no time prior to the date of his death did he have any information of any fact which would invalidate his policy, but on the contrary, that by the silence of the defendant and its officers he was induced to believe that his policy was in full force and effect and that he relied upon that belief.   Northwestern Life Asso. v. Findley, 68 S. W., 695; 25 Cyc., 858, 863, 870, 871.

Upon the trial, the defendant requested several instructions upon the theory that the first premium was never paid; that its payment was never waived by the defendant; that by reason of non-payment of the first premium the policy was not effective prior to May 20th, the date of the payment of the second premium, and that the acceptance of the May premium did not operate as a payment of the initial premium and make the policy effective after May 20th, because of the serious illness of the insured at the time of its payment.   In accordance with this theory appellant requested a peremptory instruction in its favor; also an instruction that it was the duty of Geo. Lawson, and not of the defendant's agents, to notify the defendant of his serious illness in May; further, that the policy would be invalid if George Lawson was seriously ill at the time of the payment of the May premium; and other instructions of like character, based upon the same theory noted above.   In the view we entertain of the law as expressed above, there was no error in the refusal of the requested instructions now under discussion.

Appellant's third assignment of error reads:   "The court erred in instructing the jury that if Miss Pankey, secretary of Fort Worth Lodge No. 1, agreed to accept the check of the Panther City Creamery for $13.95 in payment of the April dues 1909, of the deceased and his three brothers, and gave a receipt for same, they would find for the plaintiff, because said charge assumes that the acceptance of said check was unconditional, whereas it is the law that a check is always conditional payment unless otherwise stipulated in the contract of acceptance, which was not done in this case, and there is no evidence showing that said check was accepted and receipt for April dues given unconditionally."   The interpretation placed upon the charge in the assignment is incorrect, as is evident from an examination of the charge given, and, therefore, the assignment is overruled.   For the same reason appellant's fourth assignment of error is overruled, as in it appellant construes the charge as warranting a verdict in favor of the plaintiff upon proof of the fact that the defendant gave to the insured no notice of the non-payment of the first check and no reasonable opportunity to pay the amount of the first premium and made no demand therefor from George Lawson; while the court's charge required proof of those facts, and other facts as well, as a basis for plaintiff's recovery.   There was no error in the court's refusal to permit E. S. Royall, the Supreme President, to testify to information received by him from Ben and S. M. Lawson on May 17th, that George Lawson was then in good health, as

such evidence was not relevant to any of the issues submitted in the court's charge.

Appellant's requested instruction that the check received in payment of the first premium was a conditional payment only, was properly refused as the same ignored the issue of waiver of payment and the equitable principles of estoppel properly applicable under the circumstances. 25 Cyc., 858.

There was no evidence to show that George Lawson gave any authority to Ben and S. M. Lawson to act as his agents after the check for the first premium was paid and the policy delivered, and, hence, there was no error in the refusal of the requested instruction that it was not necessary to give the insured notice of the dishonor of the check.

Appellants requested another instruction, that Miss Clara Pankey was not the agent of the defendant in the collection of assessments and dues but was the agent of the members, and that any notice or knowledge coming to the secretary would not be notice to the defendant. This instruction was refused and properly so in view of defendant's by-law defining the duties of the secretary shown above.

Another instruction was requested, in effect, that the insured's application, and the constitution, charter, and laws of the defendant should be read and considered in connection with the policy sued on and as part of it. Several provisions of the charter and by-laws were introduced in evidence, some of which at least, bore very remotely, if at all, upon the issues, and such an instruction would have led to possible confusion of the jury, and, as the principal issues in the case were submitted in the charge to the jury, the requested instruction was properly refused.

We are further of the opinion that the verdict of the jury is amply supported by the evidence and justified by the law applicable to the facts, and that the judgment should be affirmed, and it is so ordered.

*Affirmed.*

Writ of error refused.