## THE PRÆTORIANS v. STRICKLAND. *
### No. 10942.

Court of Civil Appeals of Texas. Dallas.
Feb. 27, 1932.

Rehearing Denied March 26, 1932.

T. W. Davidson and J. W. Randall, both of Dallas, for appellant.

Will C. Thompson, of Dallas, for appellee.

JONES, C. J.

In a suit in a district court of Dallas county, appellee, Mrs. Linnie L. Strickland, as beneficiary in a certificate of insurance issued to her husband by appellant, the Prætorians, recovered judgment in the principal sum of $5,000, with interest from May 10, 1929, at the rate of 6 per cent. per annum; the judgment amounting to the sum of $5,408 on October 2, 1930, the date of its rendition. Appellant has duly perfected an appeal to this court, and the material facts are:

W. B. Strickland, on April 1, 1929, duly made application to appellant for membership in the Prætorians' council, and for the issuance of a benefit certificate not exceeding $5,-000 in class S and named appellee, his wife, as the beneficiary. This application was on a blank form furnished by appellant for such purpose, and was prepared by B. T. Price, appellant's solicitor. All of the requirements to secure the acceptance of the application were complied with, and the certificate of insurance was duly prepared by appellant on April 5, 1929. This insurance certificate was delivered by appellant to Price, for delivery to the insured, and on or about April 20, 1929, Price delivered same to Strickland in the office of C. W. Tibbs, who was present at the time of the delivery.

The undisputed evidence shows that, at the time of the delivery of this policy, Price and Strickland went over its terms, and that Strickland signified his acceptance of same, but did not make in money the initial payment of $17. The application signed by Strickland, and the constitution and by-laws of appellant, required a payment of the first premium before delivery of the policy and before the certificate of insurance would become effective; the evidence as to what was said by the agent, at the time the certificate of insurance was permitted to be taken by Strickland, is in dispute, the evidence of Price being to the effect that he informed Strickland after the policy had been read that, before he could deliver it to him, he would have to re-

*Writ of error granted.

ceive the initial payment in money, and that the certificate could not become effective without such payment; that, on Strickland's insistence that he be permitted to take the policy home to show to appellee, he reluctantly consented, and permitted Strickland to take the policy with him for such purpose, with his promise to return it, and to make the initial payment in money by the 1st of the next month. Tibbs' testimony was to the effect that, after the reading of the policy and Strickland had signified his acceptance of same, he (Strickland) told Price that he had some money coming in about the 1st of the next month, and would mail him a check for the initial premium, and that Price said "alright," and that there was nothing said about his taking the policy only for the purpose of showing it to his wife, nor that it would not become effective at that time. This disputed issue of fact was submitted to the jury and found in favor of appellee.

The evidence warrants the conclusion that, under the course of business adopted and pursued by appellant, with reference to those solicitors who went out of its main office in Dallas, as Price did, the solicitor who was instrumental in securing the application received from appellant the certificate of insurance, and was charged with the duty of delivering same to, and of receiving payment of the initial premium from, the applicant, that the soliciting agent who secured applications was required to make remittance of the initial payment by the 20th day of the succeeding month, and that no charge would be made against such agent for the initial premium of a certificate issued on the preceding month, until the 20th of the following month. Applying this rule to the instant case, it would have been the duty of Price to pay to the Supreme Council the sum of $17 on the 20th day of May, 1929, the succeeding month after the issuance of the policy, and on such date a charge would have been entered against Price for the $17. What is termed a blue card was prepared in the name of Strickland as the insured, no charge was entered thereon against Price, and no credit entered in favor of the insured. On the morning of the 6th of May, 1929, Strickland died without having made the initial payment of $17 he had promised to make by the 1st of May, nor had Price either demanded such payment or requested a return of the policy. The application for benefit membership executed by the deceased contained this clause: "Said Order shall not be liable hereunder until a certificate shall have been delivered to me, while in good health, upon which all dues or fees have been paid by me, or until I shall have been accepted as, and have become a member of said Order by compliance with all provisions of its constitution."

Under the head of "Other General Provisions," the certificate of insurance contains the following paragraph: "No change, modification or alteration of this certificate shall be made unless endorsed hereon by the President, Vice-President or the Secretary of The Praetorians. The Praetorians shall not be bound by any promise or representation made by any person unless made in writing by one of said officials. It is agreed by the insured holding this certificate that the certificate, the charter or articles of incorporation, the constitution and by-laws of The Praetorians, and the application hereof, and the medical examination signed by the applicant, with all amendments thereof, shall constitute the agreement between The Praetorians and the insured."

The constitution contains the following paragraphs:

"Section 2: Liability on a certificate shall not exist against the Order until the applicant has paid his advance benefit dues and all entrance fees and general fund or dues, as herein provided. * * *

"Section 3: No Agent, Deputy, Organizer, Council, Committee, or Body whatsoever, shall be authorized to waive any part of this article.

"Section 4: No certificate shall be delivered until all money due thereon has been first paid; provided, no certificate shall be delivered to a person who is not at that time in good health. If delivered to a member not in good health, it shall create no liability against the Order. Subject to the terms thereof, a certificate shall be in full force when delivered to a member."

There was introduced in evidence a piece of literature, circulated by appellant under the indorsement of its officers and board of directors. In this literature there appears in capital letters the "payments monthly, quarterly, semi-annually or annually." Also in capital letters, "all certificates in full force from date of delivery." Then, in ordinary type, "policy pays full amount in case of death any time after delivery." This literature does not contradict any clause in appellant's constitution or by-laws.

It is the contention of appellee that, when the policy was delivered to deceased, about April 20, 1929, by the person authorized to deliver same, on the promise of deceased to make the initial payment of $17 by May 1, 1929, there was a waiver of the discharge of this obligation in money at the time of delivery, and that the certificate became effective and binding on the date of this delivery; that through its manner of doing business appellant had impliedly authorized its solicitor, Price, to allow the payment to be made in this way. This contention is supported by proper pleadings on the part of appellee. On the other hand, appellant contends that, as, under its constitution and by-laws, the terms of the application and the certificate of insurance, the

contract of insurance could not become effective until the initial payment had been made in money, there could be no delivery of the policy in the sense of creating a binding obligation on appellant, until such payment had been made; that the constitution and by-laws, made a part of the certificate, forbid the waiver by Price of this prerequisite to the delivery of the certificate, and hence there had been no completed contract of insurance, and no right of recovery in this case. These contentions are made by proper defensive pleadings.

In line with its theory, appellant requested peremptory instruction in its favor, and duly excepted to the submission of each of the special issues to the jury, on the ground that the evidence raised no issue of the contract of insurance alleged. On the court overruling its request for peremptory instruction, and submitting the case to the jury, over its objections thereto, appellant duly excepted and has filed proper assignments of error in this court.

The court submitted the case to the jury on special issues, which issues, together with the verdict thereon, are as follows:

"Special Issue No. 1: Do you find and believe from a preponderance of the evidence that the agent of the defendant, The Praetorians, delivered the policy sued on to the deceased, W. B. Strickland, with an extension of credit under which the premium on said policy might be paid at a later date? Answer: Yes.

"Special Issue No. 2: Do you find and believe from a preponderance of the evidence that The Praetorians, by its course of conduct in the issuance and handling of the policy sued on in permitting same to be handled in the way it was handled and its method of doing business, gave to B. T. Price, its solicitor, implied authority to deliver the policy sued on with an extension of credit as to the premium thereon, if you have found that any credit was extended? Answer: Yes.

"Special Issue No. 3: Do you find and believe from a preponderance of the evidence that the certificate of insurance in question was delivered to W. B. Strickland without the payment of premium, but with the condition that it would not be in force until the initial premium was paid? Answer: No."

These findings of the jury are sustained by the evidence, and are adopted as the findings of this court.

Appellant submits two propositions of law as the basis of its contention. These propositions are: (1) "Negotiations between parties do not amount to a contract, nor are they bound thereby until the same is a completed or closed transaction. The minds of the parties have not met"; and (2) "A sales agent for a fraternal benefit association has no authority to waive or vary the express provisions of a written contract."

■ There can be no question, as an abstract proposition of law, of the soundness of the first proposition announced by appellant. The minds of the parties, attempting to contract between themselves, must meet in agreement before there can be any binding obligation on either. Unless the minds of the parties met in agreement on the contract of insurance in the instant case, no binding obligation rests upon appellant. When can it be said that the minds of the parties have met in insurance contracts? It is not when the person, seeking to become insured, has made a written application for the issuance to him of an insurance policy, for such an instrument constitutes only a proposition by the one, desiring to be insured, for the issuance to him of the insurer's policy, evidencing the desired contract. Nor is it when the insurer has prepared the character of insurance policy called for by the application and submits it to the applicant only for his inspection. The one action only evidences the willingness of the applicant to become insured, and the other action only evidences the willingness of the other party to become the insurer. So, in the instant case, when appellant received deceased's application and the evidence that he had successfully passed the medical test required, had been initiated into appellant's order, and on this had prepared the certificate of insurance in question, delivered it to Price for submission and delivery to deceased, no binding contract of insurance had been created. Under the law, the final consummation of a contract of insurance is had when a representative of the insurer delivers to the insured, or his authorized agent, the insurance policy, for the purpose of its taking immediate effect and the insured accepts same for such purpose. So, in the instant case, if the certificate of insurance in question was not delivered to deceased and accepted by him as a final consummation of the insurance contract, there was no insurance contract between appellant and deceased. The purpose of Price, in the delivery of the certificate of insurance, was a disputed issue of fact passed upon by the jury. The findings of the jury on special issues Nos. 1 and 3, submitting this disputed issue, leave no question but what the insurance certificate was delivered for the purpose of its becoming immediately effective. It follows, therefore, if Price was acting in the scope, or apparent scope, of his authority in accepting the deceased's promise to make the initial payment in the near future, as satisfaction for, and in lieu of, payment in money, then the contract of insurance between appellant and deceased was consummated at the time of this delivery, and was a binding contract at the time of deceased's death. Joyce on Insurance, vol. 1, §§ 77, 79, 80, and 80a, and authorities cited in notes to these sections.

This brings us to a consideration of appellant's contention, embraced in its second proposition, which, stated concretely, is: Did the solicitor, Price, have the power to grant the extension of time in face of the restrictive clause in the application, and in the Constitution and by-laws of appellant? There can be no question of the soundness of appellant's second proposition that a "sales agent for a fraternal benefit association has no authority to waive or vary the express provisions of a written contract," when considered as an abstract proposition of law. If Price had only authority to solicit applications from those desiring to insure with appellant, and did not have authority to deliver an insurance certificate and collect the initial premium, as a consummation of the final act in completing this insurance contract, then it could not be said that he had even apparent authority to waive any rule or requirement adopted by appellant as to the initial payment. However, appellant did not narrow Price's power to that of mere soliciting agent, but clothed him with the power to perform the final act necessary to consummate the contract of insurance, viz., that of the delivery to deceased of the certificate of insurance. This is a power that belongs to appellant to be performed by the officer or agent it may designate. The agent designated to perform this act bears the same relation to appellant, a fraternal benefit insurance association, as a general agent bears to other insurance companies, and his act in finally consummating the contract of insurance is the act of appellant. The Praetorians v. Krusz (Tex. Civ. App.) 36 S.W.(2d) 1043; Bailey v. Sovereign Camp, W. O. W., 116 Tex. 160, 286 S. W. 456, 457, 288 S. W. 115, 47 A. L. R. 876; Brotherhood of R. R. Trainmen v. Smith (Tex. Civ. App.) 36 S.W. (2d) 771; Provident Savings Society v. Oliver, 22 Tex. Civ. App. 8, 53 S. W. 594; Supreme Lodge v. Lawson, 63 Tex. Civ. App. 273, 133 S. W. 907; Liberty Life Ins. Co. v. Moore (Tex. Civ. App.) 10 S.W.(2d) 178; Masons v. Brown (Tex. Civ. App.) 9 S.W.(2d) 364; McCorkle v. Texas Benev. Ass'n, 71 Tex. 149, 8 S. W. 516; Wichita Home Ins. Co. v. Montgomery (Tex. Civ. App.) 4 S.W. (2d) 1041.

A waiver as defined by 27 R. C. L. p. 904, is "the intentional relinquishment of a known right. It is a voluntary act, and implies an election by the party to dispense with something of value, or to forego some advantage, which he might at his option have demanded and insisted upon." The doctrine of waiver applies to all rights or privileges to which a person is legally entitled, whether given him by contract, conferred by statute, or resting under a constitutional guaranty, provided such right or privilege rests in the individual and is intended for his sole benefit. 27 R. C. L. 906. The right of requiring an initial payment, as reserved by appellant's constitution and by-laws, before the consummation of its contract of insurance, is a right solely for its own benefit, and is such a right that it can waive or accept, as satisfaction therefor, a promissory note or a verbal promise in lieu of money for the initial payment. Brooklyn Life Ins. Co. v. Miller, 12 Wall. 285, 20 L. Ed. 398; Joyce on Insurance, vol. 1, § 80, and authorities therein cited; Mutual Life Ins. Co. v. Abbey, 76 Ark. 328, 88 S. W. 951.

When appellant placed the additional duty on its soliciting agent, Price, to make delivery of this policy to the deceased, and to secure from him the initial payment, it placed it in his power to deliver a policy, on the promise of an insured, that the initial payment would be made in money in the near future, and thereby to leave such an insured with the belief that, by such delivery, he had been given a binding contract of insurance. It is generally held, and in the face of such restrictions in the constitution and by-laws as in the instant case, that, when one empowered with a power to deliver a policy accepts a promissory note in lieu of a money payment, his act is binding on the insurer. (See authorities above cited.)

There is no difference in principle in the payment of a debt by note and in the payment of a debt by an oral promise. The implied authority of Price to extend to deceased credit on the initial payment was found by the jury in response to special issue No. 2 to exist in the instant case, under the facts and circumstances in evidence, and we believe such finding is sustained by the evidence and is decisive of the question now under discussion.

We therefore hold that Price had the implied authority to determine the manner in which the initial payment of the certificate of insurance would be paid, and that, as he exercised this power by an extension of time, his act was the act of appellant, and constituted a waiver of the immediate payment in money of the initial premium. It necessarily follows that, in our opinion, this case should be affirmed, and it is so ordered.

Affirmed.