WESTERN ASSUR. CO. v. HILLYER-DEUTSCH–JARRATT CO.

(No. 5258.)

(Court of Civil Appeals of Texas. San Antonio. May 20, 1914. Rehearing Denied June 17, 1914.)

1. REFORMATION OF INSTRUMENTS (§ 45*)—SUFFICIENCY OF EVIDENCE—INSURANCE POLICY—MISTAKE.

Evidence in an action for the reformation of an insurance policy, naming L. as the insured and K. as mortgagee and payee in case of loss, *held* sufficient to support a judgment reforming the policy by inserting plaintiff's name in the mortgage clause, on the ground of the insurer's mistake in not making that clause in favor of plaintiff.

[Ed. Note.—For other cases, see Reformation of Instruments, Cent. Dig. §§ 157–193; Dec. Dig. § 45.*]

2. PLEADING (§ 69*)—PETITION—ADMISSIONS.

In an action to reform an insurance policy, made out to L. as the insured and to K. as mortgagee and payee, by inserting the name of plaintiff as mortgagee and payee, an allegation of the petition that L. was the contractor who was building on the premises, and that at the time of the loss he had no interest therein and never had any interest therein, related to the premises described and, being true, was not an admission that L. never had any interest in the building, so as to show that, according to its express terms, the policy was void for want of insurable interest.

[Ed. Note.—For other cases, see Pleading, Dec. Dig. § 69.*]

3. INSURANCE (§ 378*)—ESTOPPEL—DELIVERY OF POLICY.

An insurance company, whose agent was fully informed of the interest of the party named as the insured, who in fact had an insurable interest, and that the party mistakenly named as mortgagee and payee was in fact the owner, could not be heard to say that it delivered what it then knew to be an invalid policy, so as to defeat recovery by the party designated as the insured.

[Ed. Note.—For other cases, see Insurance, Cent. Dig. §§ 968–997; Dec. Dig. § 378.*]

4. REFORMATION OF INSTRUMENTS (§ 45*)—EVIDENCE—PRESUMPTION AND BURDEN OF PROOF.

In an action to reform an insurance policy, the evidence must be clear and convincing to overcome the presumption that the policy embodies the real intention of the parties.

[Ed. Note.—For other cases, see Reformation of Instruments, Cent. Dig. §§ 157–193; Dec. Dig. § 45.*]

5. TRIAL (§ 194*)—INSTRUCTIONS—WEIGHT OF EVIDENCE.

The rule that in a particular case the evidence must be clear and convincing to justify equitable relief by reformation of an instrument should not be given in the charge to the jury.

[Ed. Note.—For other cases, see Trial, Cent. Dig. §§ 413, 436, 439–441, 446–454, 456–466; Dec. Dig. § 194.*]

6. APPEAL AND ERROR (§ 1001*)—REVIEW—VERDICT.

A verdict for plaintiff in an action to reform a fire policy by inserting its name as mortgagee and payee, brought on the ground of mistake in the writing of the policy, and in which the rules of evidence required that the evidence be clear and convincing, could not be set aside, without invading the province of the jury, merely because the Court of Civil Appeals would have judged differently as to the credibility of the witnesses.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 3922, 3928–3934; Dec. Dig. § 1001.*]

7. CONTRACTS (§ 155*)—CONSTRUCTION AGAINST PARTY DRAWING UP CONTRACT.

A contract drawn by one party is always construed most strictly against such party.

[Ed. Note.—For other cases, see Contracts, Cent. Dig. § 736; Dec. Dig. § 155.*]

8. INSURANCE (§ 322*)—CONDITIONS—OCCUPANCY.

A provision, in a so-called union mortgage clause, that the mortgagee should notify the insurer of a change in occupancy was not violated by failing to notify the insurer of the owner's neglect to occupy the house when completed.

[Ed. Note.—For other cases, see Insurance, Cent. Dig. § 760; Dec. Dig. § 322.*]

9. INSURANCE (§ 115*)—INSURABLE INTEREST—CONTRACTOR.

A contractor for a building may have an insurable interest sufficient to sustain a fire policy on the building under construction to the extent of whatever is due him, even though he is to be paid by the week and has no rights other than the statutory one of filing a mechanic's lien.

[Ed. Note.—For other cases, see Insurance, Cent. Dig. §§ 139–157, 177; Dec. Dig. § 115.*]

10. INSURANCE (§ 146*)—CONSTRUCTION—FORFEITURE.

A forfeiture clause in an insurance policy should be strictly construed.

[Ed. Note.—For other cases, see Insurance, Cent. Dig. §§ 292, 294–298; Dec. Dig. § 146.*]

11. INSURANCE (§ 328*)—CONDITIONS—CHANGE OF OWNERSHIP.

Under a policy on a building under construction, naming L. as the insured and K. as mortgagee and payee, with a rate analysis slip attached naming K. as "owner or occupant" of the premises, and with a mortgage clause providing that the mortgagee should notify the insurer of any change of ownership or occupancy known to him, and that, unless such change was permitted, the policy should be void, the ownership was that of K., as mentioned in the analysis slip, and not the interest of L., so that, when the insurable interest passed from L., it did not necessitate a report by plaintiff, the mortgagee named in the policy as reformed.

[Ed. Note.—For other cases, see Insurance, Cent. Dig. §§ 794–822, 825; Dec. Dig. § 328.*]

12. WITNESSES (§ 345*)—IMPEACHMENT—ACCUSATION OF CRIME.

It is not competent to impeach a witness by proving that he has been indicted for a felony or other crime, but the inquiry should be confined to proof of general reputation for truth.

[Ed. Note.—For other cases, see Witnesses, Cent. Dig. §§ 1126–1128; Dec. Dig. § 345.*]

Error from District Court, Bexar County; R. H. Ward, Judge.

Action by the Hillyer-Deutsch-Jarratt Company against the Western Assurance Company, C. L. King, and another. Dismissed as to King, and judgment for plaintiff, subrogating defendant Western Assurance Company to its liens against King, and the defendant company brings error. Affirmed.

Wm. Thompson and Jno. S. Patterson, both of Dallas, for plaintiff in error. M. J. Arnold, R. S. Cozby, and W. S. Peyton, all of San Antonio, for defendant in error.

MOURSUND, J.   Hillyer-Deutsch-Jarratt Company, a corporation, sued the Western Assurance Company, R. H. Lindville, and C. L. King, seeking to reform an insurance policy for $2,750 and recover thereon. The policy was issued by Nicholson, Furnish & Smith upon a building in the course of erection upon a lot owned by C. L. King, and named R. H. Lindville as the insured and C. L. King as the mortgagee. It also named King as beneficiary in a loss payable clause, and contained no mention of plaintiff. It was alleged that Lindville had never owned any interest in the building, and that by a mutual mistake his name was inserted as owner instead of that of C. L. King, and the name of King in the mortgage clause instead of that of Hillyer-Deutsch-Jarratt Company. King owed plaintiff $2,450, evidenced by a note dated December 27, 1911, and secured by a builder's and contractor's lien, as well as a deed of trust upon the insured premises, and plaintiff prayed that it recover of Western Assurance Company the amount due upon said note.

The Western Assurance Company answered by general demurrer, various special exceptions, a general denial, and a special answer, in which, at considerable length, various provisions of the policy are pleaded and their violation alleged, and it is contended that each of such violations, under the terms of the policy, rendered the same void. Said defendant prayed, if any judgment be rendered against it, then that it be subrogated to the rights held by plaintiff, and that it have judgment over against Lindville or King or upon any security held by plaintiff herein, and for general relief.

Plaintiff, by first amended supplemental petition, denied the allegations of the answer, and alleged various matters in avoidance of the defenses pleaded by defendant.

The case was dismissed as to C. L. King, because he was not a resident of the state of Texas, and could not be located. The trial resulted in a verdict and judgment for plaintiff against the insurance company for $2,450, with 8 per cent. interest from December 27, 1911, and that Lindville take nothing, and further that the insurance company be subrogated to the liens held by plaintiff against King.

By the first assignment of error complaint is made of the court's refusal to give a peremptory instruction to find for appellant; it being contended that the evidence is insufficient to support a judgment reforming the written contract.

C. L. King purchased a lot at Alamo Heights, and employed G. E. Haney, an architect, to draw plans for a house to be erected thereon. King then made a contract with R. H. Lindville to build the house for $2,750; $300 being paid by King, and $2,450 was to be paid by Hillyer-Deutsch-Jarratt Company, plaintiff below, pursuant to arrangements made by King. King gave his note to plaintiff for the amount, and executed a builder's

167 S.W.—52

and mechanic's lien in its favor, and also a deed of trust, both upon the lot upon which the house was to be erected, and in each covenanted to keep such house insured in a company to be approved by plaintiff, with mortgage clause in favor of plaintiff, and in the deed of trust it was provided that King should deliver the policy to plaintiff. King went to Mexico, but authorized Haney to sign his name to orders upon plaintiff in favor of Lindville at the end of each week. Haney received no pay for such service, but agreed to inspect the work as an act of friendship for King. The house was completed February 3, 1912, and remained vacant up to March 20, 1912, upon which date it was destroyed by fire. Haney gave Lindville an order upon plaintiff for the final payment upon the house, and such payment was made on February 3, 1912, at which time Lindville informed plaintiff of the completion of the house, but did not deliver the keys to them. King did not take out any insurance before he left, and there is no evidence that he requested Haney to do so or discussed the matter with Lindville or plaintiff. On January 2, 1912, Haney called at the office of Nicholson, Furnish & Smith, defendant's agents at San Antonio, for the purpose of procuring an insurance policy to be written upon the King house, being impelled to give the business to said firm because he had promised some business of that kind to an acquaintance of his by the name of McNeal who was an employé of Nicholson, Furnish & Smith, authorized by them to solicit and write insurance, and Haney testified that he represented the interested parties, King and Hillyer-Deutsch-Jarratt Company. He also testified:

"Mr. McNeal was there, and I gave him the data, told him I wanted an insurance policy on this building, that Mr. King was the owner; and, as I remember, he asked me if there was a mortgage clause on it, and I told him yes. That Hillyer-Deutsch-Jarratt Company was to furnish the money, and Mr. Lindville was the contractor."

He told McNeal the amount was to be $2,-750, gave him the lot and block number, and told him C. L. King was the owner. Upon being asked what was said about the length of the policy, he stated: "It was written for one year." He was asked: "What, if anything, was to be done with this data that you gave him?" He testified: "Write a policy at once covering this property." He was then asked: "Write it different or the same as you had instructed him?" And he answered: "Just as I had instructed him to write it." He testified further that McNeal said he would attend to it at once, would write the policy in accordance with the data he had furnished him; that the building had just been started; that it was afterwards completed and was destroyed by fire; that he did not see the policy after it was written. Upon cross-examination he admitted that Hillyer-Deutsch-Jarratt Company did not send him to get the insurance, and that Lindville did

send him; also that he told McNeal that Lindville had a contract for $2,750, and that he (Haney) wanted $2,750 insurance. McNeal, testifying about the transaction with Haney, said:

"I do not remember his exact words, but he went on to say that he had Mr. Lindville building a house for Mr. King out in Alamo Heights, and that he wanted insurance on it of $2,750, and wanted it to take effect that night. I wrote the information on a slip of paper on my desk. Both of us were standing up, and I was writing on the leaf of the desk. I wrote on that slip, 'R. H. Lindville, $2,750,' and the address of the place. * * * I had a description of the property, with the lot and block number, and I also had Mr. C. L. King's name. I put R. H. Lindville on that slip of paper according to instructions from Mr. Haney. He told me to; told me he wanted the policy written for Mr. Lindville. He said Mr. King was the owner, and that he wanted a mortgage clause showing that Mr. King had an interest. I do not think there was anything more on the slip. Mr. Rice came to the door, and I called him in and introduced him to Mr. Haney, and told him that I had been trying for a good while to get the business. I gave him the slip of paper, and he asked Mr. Haney into his office, and, as I had work to do, I went on back to my desk. * * * I had heard of Hillyer-Deutsch-Jarratt, but had never solicited insurance from them. I had written policies in which their name appeared while working for Ewing & Co., and had written policies with mortgage clauses in their favor attached. I am reasonably sure the Hillyer-Deutsch-Jarratt Company was not mentioned by Mr. Haney while he was in the office. If Hillyer-Deutsch-Jarratt Company's name was supposed to be in the policy, I would want it put in to protect them and to make the policy read right. G. E. Haney did not request me to put a mortgage clause on this policy to Hillyer-Deutsch-Jarratt Company. Mr. Haney did not request their name in the policy in any way. I am positive about that. I am not interested in this case, and am not associated with the insurance company in any position whatever. Mr. Haney was looking over my shoulder at the slip of paper on which I made my notations; and I do not see how he could help but see it. Hillyer-Deutsch-Jarratt's name did not appear upon that slip of paper. There is quite a business between Hillyer-Deutsch-Jarratt and Nicholson, Furnish & Smith, and Mr. Hillyer often comes up there. The firm did not write so much business for Hillyer-Deutsch-Jarratt Company, but attached many mortgage clauses in favor of that company. * * * I made an entry in the journal at the time. That entry is in my handwriting and is 'R. H. Lindville, dated January 3, 1912, 5624897, $38.50.' The amount was the amount of the premium; the big number is the number of the policy. I charged the premium to Mr. Lindville because the policy is made out that way. * * * After the policy was written by me, I handed it to Mr. Rice for his signature. I do not know what he did with it. I wrote the name of Mr. Lindville as assured, following the instructions of Mr. Rice and Mr. Haney, and put the name of Mr. King in as mortgagee, and in the loss payable clause for the same reason, following the instructions of Mr. Rice and Mr. Haney. I did not put in the name of Hillyer-Deutsch-Jarratt Company because I was not instructed to, by either Mr. Rice or Mr. Haney. I am positive Mr. Haney did not tell me to put on a mortgage clause for Hillyer-Deutsch-Jarratt. * * *"

Upon cross-examination he testified:

"Mr. Haney did not tell me where to put Mr. Lindville's name in the policy—any particular line. What he did was to give me the data on which I was afterwards to write the policy. Mr. Haney said something about a mortgage. The word 'mortgage' was used by him. He told me that Mr. Lindville was the contractor who was building or rather said that Mr. Lindville was building the house for the owner, King. I did not put Mr. King's name in as the owner on account of the direction given me by Mr. Haney and Mr. Rice. Mr. Haney told me that Mr. King was the owner. He told me that he wanted the insurance according to the data that was given me. Mr. Haney told me that Mr. King was the owner of the ground. I made Lindville the insured in the policy. Mr. Haney mentioned the question of a mortgage. Mr. Haney did not tell me that Mr. King had a mortgage on the property. He did not tell me that Mr. Lindville had a mortgage on the property. I have Mr. Lindville in the policy as the assured. I do not think I made that rate analysis attached to the policy. Mr. King's name is on the rate analysis slip as owner or occupant. At that time, I did not know that he was not the occupant of the building; therefore I put his name there as being owner. I put his name on the front page as having a mortgage on the property. I put the contractor's name in as being the assured. * * * I told you, Mr. Arnold, that, if Mr. Haney had mentioned the name of Hillyer-Deutsch-Jarratt Company, it was mentioned at a time and in a way that it made no impression on my memory. I am willing to testify that Mr. Haney didn't tell me to put a mortgage clause on that policy in favor of Hillyer-Deutsch-Jarratt. He didn't tell me to put Mr. Lindville's name in there as owner either; but he did tell me to write the policy for Mr. Lindville. He told me that Mr. King was the owner. I put Lindville in there as the assured. He told me that Lindville was the contractor. The word 'mortgage' was mentioned in this conversation."

He testified further that he wanted the policy written so that it would protect all the people, and thought it was good; that he put in everything Haney told him to, and saw nothing in it contrary to the instructions given him by Haney; that, knowing King had an interest in the building, he put his name in as mortgagee, so that he would be protected; that he (McNeal) was new to the business of writing policies, and for that reason passed the policy up to Rice for approval after writing it.

J. T. Rice, manager of the insurance department of Nicholson, Furnish & Smith, testified that Hillyer-Deutsch-Jarratt Company were good customers of his employers at the time the policy was written and at the time of the trial; that McNeal brought Haney into witness' office on January 2, 1912, and the policy was written on January 3d; that McNeal introduced Haney, stating that Haney wanted to give them an insurance policy, and that McNeal gave witness a pencil memorandum, containing the names of the parties, the amount and class of policy desired, namely, a builder's risk upon a building in process of construction; that he read the memorandum and asked Haney if the "Loss Payable 'Clause'" should be made to King, and he said yes; that on the memorandum was the name of the assured, R. H. Lindville, the lot and block number, the name of the street, the amount, $2,750, and the name of him whom Haney claimed to be the mort-

gagee, C. L. King; that Haney said Lindville was a contractor, and they had just started the building and wanted a builder's risk; that witness kept the memorandum on his desk; that Haney said nothing about King except that the mortgage clause should be written in his name; that they were careful to protect lumber yards and mortgagees when their names were mentioned, and he believed they had prior to that time written or "fixed" policies for plaintiff in that way, but that plaintiff's name was not mentioned upon this occasion; that witness inspected the house the next day, before the policy was written, and talked to a man there whom he took to be a carpenter, and he did not think it was Lindville, but asked only one question for the purpose of ascertaining whether he had located the property he wanted to inspect, which question was whether it was the house King was building, or perhaps whether it was the house Lindville was building; that no reason existed why he would not have inserted plaintiff's name in a mortgage clause if he had been requested to do so; that, if Lindville's name was placed in the wrong place, it should have been placed in the loss payable clause, when witness was told that he was the contractor; that he was told by Haney that Lindville was the contractor and King the owner, and to make the loss payable clause to King; that, when a man takes a contract to build a house, he has an insurable interest in the building until it is completed, even if he is paid at the end of each week; that no one paid the premium on the policy, or called to see about it, or gave notice that the house was vacant; that he asked Haney on March 5th, and again on March 12th, if the house was completed, and each time Haney replied that he did not know, but would ascertain from Lindville and let him know, but that Haney failed to furnish the information to witness; that witness wanted to cancel the builder's risk upon completion of the house; that the house was completed on February 3, 1912, but neither plaintiff nor any one else notified Nicholson, Furnish & Smith of such completion; that he learned, for the first time, after the house was destroyed, that it had been vacant from the day it was completed until it was destroyed; that Haney said to send the policy to Lindville's address, which witness could find in the telephone book, and said he was placing the order for insurance for Mr. Lindville, and the premium was charged to Lindville; that credit was extended to Lindville for the amount of the premium, and appellant's part was remitted to it by Nicholson, Furnish & Smith on February 1st, and was returned, but witness could not say whether it was before or after the fire; that Lindville offered to pay the premium after the fire; that Haney told him upon a certain occasion he did not remember saying anything about plaintiff's name being mentioned, and was quite sure he did not,

and that it was probably a mistake on his part in not naming plaintiff as mortgagee. Haney was recalled and denied such conversation, and testified he gave the data upon which the policy was written to McNeal, and not to Rice.

Lindville testified that, when Rice inspected the house, he asked Lindville if it was a Hillyer-Deutsch-Jarratt job, and that Lindville told him it was; that he got the policy at Wagner's Drug Store and at once turned it over to Mr. Zebo at Hillyer-Deutsch-Jarratt's, without looking over it. He did not fix the date when he got it. He testified further that, if the lumber had burned up before he completed the house, it would have been his loss; that his interest in the house ceased on February 3d, when he was paid for it. He was asked, "You had the insurance policy written on that house and on that extra lumber, material on the ground to build that house?" to which he replied, "Yes, sir."

Rice, being recalled, testified that the name of plaintiff was not mentioned by any one in the conversation he had at the King house when he inspected the same.

Zebo, cashier for plaintiff, did not testify.

Hillyer, who was the general manager, testified that the policy was delivered to their cashier, who put it in the safe without looking at it, and that it stayed there a couple of months, and was not examined by them until after the fire. Hillyer saw the King house on March 16, 1912, and found no one at home; he did not go into the house, but looked into the front windows and a window on the side, and so far as he could see the front room was unoccupied; he saw no furniture, but did not know what they had in the house because he did not get in the room; he tried to find out immediately, but before he did the house burned. He saw nothing to indicate that the house was occupied.

The rate and analysis slip attached to the policy names King as "owner or occupant" of the property, but Lindville is named in the policy as the insured. The policy provides that it shall be void if the interest of the insured be not truly stated therein, or in case of fraud by the insured touching any matter relating to the insurance, or, unless otherwise provided by agreement indorsed thereon or added thereto, if the interest of the insured be other than unconditional and sole ownership, or if the subject of insurance be a building on ground not owned by the insured in fee simple. There is no indorsement upon the policy or agreement attached which defines Lindville's interest in the building. The slip attached, wherein the property is described, is headed "Building in Process," and contains no language which would not apply to insurance by the owner of the building, and nothing which can be construed as a recognition of the fact that a contractor was insuring his interest in the building.

The mortgage clause provided, among other things, that, as to the interest of the mortgagee, the policy shall not be invalidated by any act or neglect of the mortgagor or owner of the property, nor by any change in the title or ownership of the property, and it further provided:

" *  *  * That the mortgagee (or trustee) shall notify this company of any change of ownership or occupancy or increase of hazard which shall come to the knowledge of said mortgagee (or trustee), and, unless permitted by this policy, it shall be noted thereon, and the mortgagee (or trustee) shall, on demand, pay the premium for such increased hazard for the term of the use thereof; otherwise this policy shall be null and void."

[1] The assignment of error states two grounds upon which it is contended that the peremptory instruction should have been given, and they are urged by appropriate propositions.

One is that Hillyer-Deutsch-Jarratt were not parties to the contract, had no interest therein, and were not entitled to have the same reformed. In considering whether the parties made a verbal contract, with the terms as contended for by plaintiff, the conversation between Haney and McNeal is of the first importance. If any contract was made (that is, if the minds of the parties met), such contract was agreed upon by them. Let us see what instructions were given by Haney to McNeal. He told McNeal he wanted an insurance policy on the building, that King was the owner, and, as he remembered, McNeal asked him if there was a mortgage clause on it, and he said yes; that Hillyer-Deutsch-Jarratt Company was to furnish the money, and Mr. Lindville was the contractor. Taking Haney's recollection as true, he instructed McNeal to place a mortgage clause upon the policy, and McNeal must have known that it was to be in favor of plaintiff, because he was told that it furnished the money. So, taking that statement as true, and finding that, in spite of his testimony to the contrary, McNeal must have understood and acceded to such request, the conclusion follows that McNeal made a mistake in failing to incorporate such agreement in the policy. McNeal could not have understood that Lindville's name was to go into the mortgage clause, because he did not place same therein, nor does the testimony warrant a construction that King's name should be inserted therein. A circumstance relied upon by appellant is that McNeal testified that Haney was looking over McNeal's shoulder while the latter was writing down the information communicated by Haney. Haney, though recalled, was not questioned upon this point. The memorandum was not introduced in evidence, but McNeal and Rice testified to its contents. They did not undertake to state exactly how the memorandum was written. It does not appear that Lindville was described in the memorandum as the insured, but that his name was mention-

ed, followed by the amount, and that King's name was also mentioned, but not that of Hillyer-Deutsch-Jarratt Company. Neither McNeal nor Rice testified that the memorandum contained words indicating that King's name was to be put in the loss payable clause or in a mortgage clause. It is evident from Rice's testimony that he inferred King's name was to go into the loss payable clause, because he at once, after reading the memorandum, asked Haney if such clause should be made to King. Neither McNeal nor Rice testified that Haney said to put King's name in the loss payable clause and in a separate mortgage clause, and we think the jury was justified in concluding that both witnesses used the term "mortgage clause" in portions of their testimony when they meant loss payable clause. McNeal did not go into Rice's office with Haney, and it appears that Haney was not led into Rice's presence to make a contract, but merely to evidence the value of McNeal's services to his employers. McNeal, being new to the business, deferred to Rice in writing the policy, as he testified that he undertook to follow the instructions of Mr. Rice and Mr. Haney. Haney's visit was upon a busy day for Rice and McNeal, and errors were likely to occur. McNeal, though very positive about some matters, admitted that something was said about a mortgage, yet never undertook to state just what was said in regard thereto, thus leaving the jury to infer that some conversation took place about a mortgage, which he understood at the time and agreed to, but which had slipped his memory. If they believed Haney, they must have found that McNeal understood and agreed to the request for a mortgage clause in favor of plaintiff, but neglected to write plaintiff's name in the memorandum, and in the rush of business and preparation of policies forgot that the clause was to be in favor of plaintiff, and wrote the policy according to Rice's instructions, which were based upon the memorandum.

[2] The other ground relied upon by appellant is that the evidence shows the policy was null and void as to R. H. Lindville, and therefore plaintiff could not recover. In this connection, appellant seeks to construe plaintiff's petition as an admission that Lindville never had any interest in the house built for King, and makes several contentions based upon such construction, one being that Lindville, therefore, had no insurable interest and the policy was void; another that, such being the case, Haney misrepresented a material fact in stating that Lindville was the contractor and did not truly state the interest of the insured. Plaintiff alleged that Lindville "was merely the contractor who was building the improvements upon the above-described property and had no interest therein at the time of the fire as hereinafter set forth, and has never had any

interest in the property above described." It may be that the allegation that Lindville had no interest at the time of the fire relates to the improvements as well as the "above-described property"; but it is clear that the allegation that he has never had any interest relates to the property above described, meaning the property upon which the building was erected. Said allegation is true and cannot be construed as any admission that Lindville, as contractor, had no insurable interest in the building.

[3] The evidence shows that Lindville had an insurable interest in the building as contractor, and appellant admits it in its brief, and while there are clauses which, if given effect, would render the policy void if Lindville be the insured, yet as the evidence shows that appellant's agent was fully informed of the interest Lindville had, and that King was the owner, we do not hesitate to say that Lindville could have recovered upon the policy as the insured, if in fact the contract provided that he was the insured. The company could not be heard to say that it delivered what it knew at the time to be an invalid policy. Wagner & Chabot v. Westchester Fire Ins. Co., 92 Tex. 549, 50 S. W. 569; Ins. Co. v. Cummings, 98 Tex. 115, 81 S. W. 705; Fire Association v. Compress Co., 50 Tex. Civ. App. 172, 109 S. W. 1134.

As we construe the court's charge, the issue was not submitted whether it was agreed between Haney and McNeal that King would be the insured and Lindville the beneficiary in the loss payable clause, but merely whether it was agreed that plaintiff's name should be placed in the mortgage clause. Appellant does not complain of the charge, nor does it contend by proposition that the evidence must be sufficient to reform the policy so as to make King the insured. We will therefore not discuss the evidence with respect to that issue.

[4] Appellant contends, however, that the evidence must be clear and convincing to overcome the presumption that the policy embodies the real intention of the parties, citing Delaware Ins. Co. v. Hill, 127 S. W. 286, and other cases. True, this case falls within one of the classes of cases in which the courts have undertaken to specify that certain evidence is required to justify equitable relief. Recognition has frequently, and we may say uniformly, been accorded to the rule that evidence in certain cases must be "clear and satisfactory" or "clear and convincing." See the cases cited in Simpkins on Equity, pp. 158, 244 and 526.

[5] However, our courts have often stated that such rules are not to be given in charge to the jury. Stubblefield v. Stubblefield, 45 S. W. 965; Miller v. Yturria, 69 Tex. 554, 7 S. W. 206; Land Mortgage Co. v. Page, 23 Tex. Civ. App. 269, 56 S. W. 377; Feist v. Boothe, 27 S. W. 33; Barnet v. Houston, 18 Tex. Civ. App. 134, 44 S. W. 690; Baines v.

Ullmann, 71 Tex. 537, 9 S. W. 543; Howard v. Zimpleman, 14 S. W. 62; Mitchell v. Mitchell, 80 Tex. 113, 15 S. W. 705; Irvin v. Johnson, 44 Tex. Civ. App. 436, 98 S. W. 405; Smalley v. Paine, 130 S. W. 742; Baylor v. Hopf, 81 Tex. 637, 17 S. W. 230. Whether such charges should be held to be upon the weight of the evidence was a question for our Supreme Court, and the holding is referred to merely for the purpose of showing how difficult it is to apply the rule that evidence must be clear and convincing. It cannot be gainsaid that primarily it should be clear and convincing to the jury, not to us, and that we must view it with the eyes of the jury, yet with the use of a light not in their possession.

[6] Great care must be exercised not to invade the province of the jury, and it cannot be held that the evidence is not clear and convincing because we would have judged differently as to the credibility of the witnesses or on the ground that we would not know which of them to believe, and therefore consider the testimony unconvincing. All questions of credibility must be solved in favor of the verdict, and every legitimate inference favorable to the verdict drawn from the testimony and the circumstances in evidence, and when this is done, if such testimony and inferences satisfy the mind that a mistake was made to the effect contended for by plaintiff, it is our duty to uphold the verdict. Leaving out of consideration questions of credibility arising upon the testimony of Haney, which testimony we must take as true in deference to the verdict, we cannot agree with appellant as to the effect of the evidence. The real intent of the parties need not be shown by direct and positive testimony, but is it sufficient if it be established satisfactorily by the testimony of what did occur and the legitimate inferences deduced from the manner in which the policy was drawn. We conclude that we cannot say, without invading the province of the jury, that evidence in this case did not meet the requirements of the law in order to justify the reforming of the policy so as to place plaintiff's name in the mortgage clause instead of King's name. The first assignment of error is overruled.

[7, 8] By the second assignment it is contended that the undisputed evidence shows that Hillyer discovered that the house was vacant and unoccupied, and that it was his duty to notify appellant of such fact, and that he failed to do so. Hillyer's testimony is the only evidence upon this point. It has hereinbefore been stated, and does not show knowledge on the part of Hillyer of the house being vacant or unoccupied, as it shows that he was unable to see into all the rooms. A contract drawn by one party is always construed most strictly against such party, and a provision, in what is known as a "union mortgage clause," that the mortgagee shall notify the insurer of a change in occupancy,

we think, is not violated by failing to notify the insurer of the neglect of the owner to occupy the house when completed. The assignment is overruled.

[9-11] By the third assignment it is contended that the undisputed evidence shows that a change of ownership occurred in that Lindville's interest ceased when he was paid off, and passed to King, and that, as plaintiff knew of such change and failed to report it to the insurer, it could not recover. There is no evidence that plaintiff knew that Lindville was the owner of the building until it was completed, if such ownership can be deduced from Lindville's testimony. True, if Lindville be the insured, plaintiff would be chargeable with notice that he had an insurable interest in the building, and the same might be said if his name had appeared in the loss payable cause, but he could have such an interest for whatever was due him, even though he was to be paid by the week and had no rights other than the statutory one of filing a mechanic's lien. Cooley's Briefs on the Law of Ins. pp. 172, 183. Plaintiff would not be chargeable with notice that the contractor had a contract to deliver a completed building. However, as a forfeiture clause should be strictly construed, we think the word "ownership," in the mortgage clause, should not be held to refer to the interest owned by Lindville, but to the ownership of King. The rate analysis attached to the policy names King as the "owner or occupant." Lindville was not named as the owner anywhere in the policy, and, as it provided that the house was to be erected, it is plain that King was being named as the owner, and not as the occupant. Therefore, if appellant treated King in the policy as the owner, it is but fair that his ownership should be construed to be that referred to in the mortgage clause, and, as no change occurred therein, plaintiff did not violate the provision of said clause. The clause was not as broad as those which require a change in interest to be reported. If the mere fact that Lindville was named as the insured necessitated a report by plaintiff when the insurable interest passed from Lindville, then the issue whether King was agreed upon as the insured was very material and should have been submitted to the jury. We conclude, however, that the ownership referred to in the mortgage clause was that mentioned in the rate analysis, and that, before a forfeiture could be declared, it must be plainly stated in the mortgage clause that any change of the interest held by the insured should be reported by the mortgagee. The assignment is overruled.

[12] By the fourth and fifth assignments of error complaint is made of the court's refusal to permit appellant to prove that Haney and Lindville had been indicted upon the charge of burning the building covered by the policy sought to be reformed in this suit. There is nothing in the record to show that appellant was concerned in the prosecution of Haney and Lindville, and therefore the fact that a prosecution was had or indictments returned would not show prejudice against appellant upon their part, nor does appellant so contend, but contends that the indictments were admissible to impeach the witnesses. The Supreme Court has established the rule that it is not competent to impeach a witness by proving that he has been indicted for a felony or other crime, and that the inquiry should be confined to proof of general reputation for truth. Railway v. Creason, 101 Tex. 335, 107 S. W. 527. We think that decision controls in this case, and that the assignments are therefore without merit.

The sixth assignment is without merit, and is overruled.

The seventh assignment is overruled for the reasons given in overruling the first assignment.

The judgment is affirmed.

CARL, J., did not sit in this case.