We recommend that the question certified be answered, "Yes."

CURETON, C. J. The opinion of the Commission of Appeals answering the certified questions is adopted and ordered certified.

## LAW v. TEXAS STATE MUT. FIRE INS. CO. (No. 1135—5080.)

Commission of Appeals of Texas, Section A.
April 24, 1929.

For former opinion, see 12 S.W.(2d) 539.

NICKELS, J. The opinion of the Court of Civil Appeals is reported at page 505, 3 S.W. (2d), and our former opinion is reported at page 539, 12 S.W.(2d).

In the motion for rehearing it is presented: (a) That the information which Scott acquired (when Law applied for the third policy) had reference to prospective (distinguished from actual) "breach" by Law of the stipulations about "other contract of insurance." Cf. Leverette v. Texas State Mut. Fire Ins. Co. (Tex. Civ. App.) 289 S. W. 1032; So. Mut. Fire Ins. Co. v. Mazoch Bros. (Tex. Civ. App.) 291 S. W. 257, 258; Hartford Fire Ins. Co. v. Walker, 94 Tex. 473, 61 S. W. 711; Fitzmaurice v. Mut. Fire Ins. Co., 84 Tex. 61, 19 S. W. 301; Int. Indemnity Co. v. Duncan (Tex. Civ. App.) 254 S. W. 233; 26 C. J. 369. (b) Information as to actual "breach" came to Scott after Law's application to him for the third policy had been made and rejected, and hence after Scott's duty or authority had ceased. (c) Because of those things, and because Scott was merely a "soliciting agent," that information was not imputed to Scott's principal, and hence there is lack of ground for estoppel.

Perhaps (in the former opinion) we sacrificed clarity in the effort at brevity.

That the term "soliciting agent" of itself describes a relation of fixed boundaries is an assumption indulged in the motion and in general expressions in many books. The assumption, however, is the apex of a pyramid whose base is that illogic which attributes to all principals like desires and like conduct in appointing representatives. Those observations may be applied to the assumption that duty and authority of a "soliciting agent" becomes exhausted when he forwards an application, delivers a policy, and receives the premium. Exemplarily, we may set up as against the assumption mentioned some facts

of this particular relation. A policy stipulation quoted in the opinion of the Court of Civil Appeals implies (if it does not declare) that all agents (e. g., general manager, if such an one there be), except "the president, vice-president, secretary and treasurer" are "soliciting agents." Immediate context declares "the president, vice-president and treasurer" to be "soliciting agents," for it is therein stated that "no soliciting agent, other than the president, vice-president, secretary or treasurer has any authority" (to do certain things).

Definitions of powers of "agents" or of "soliciting agents" are not stated in the policies. They are given power, eo nomine, "to deliver * * * and receive * * * the premium," and all (except "president, vice-president, secretary and treasurer") are denied power to "waive, change or alter * * * provisions," etc.; but, as is manifest the particularly named grants and the specific prohibitions do not cover the entire field, since the agents are, otherwise, representatives of the company in "solicitation." This has practical illustration in the record.

The stipulations relied upon by the insurer, in any view, forecast some kind of application for additional insurance or for consent therefor. Law, it will be remembered, secured a policy including that stipulation. He felt need for additional protection. He applied to Scott for additional insurance. Scott transmitted the request upon "forms" (furnished, inferably, by the insurer in advance) requiring statement of outstanding insurance, etc. Thereupon the second policy (involved in this suit) was issued with like stipulations. This was practical interpretation: (a) That the subject-matter of the policies was not irrevocably fixed at any given time; (b) one appropriate way to deal with the matter of additional insurance was to initiate the movement by application to Scott; (c) per force, Scott's duty in respect to the policies outstanding had not ended with collection of premiums and delivery of the policies.

Scott's possession of "forms" calling for data in respect to outstanding insurance and the circumstance (of practical interpretation) just mentioned do not make up all of the evidence of Scott's unfinished duty in respect to the policies issued and sued upon. After the fire Scott and Law went to the insurer's "general office" in Dallas, ostensibly in an effort to secure payment. Law testified: (a) That Scott was there asked by the officer or agent in charge of the matters, "Why didn't you put this on?" (meaning the additional insurance applied for by Law). (b) That Scott replied: "I didn't allow you all would stand for it." (c) That such agent or officer replied: "We would stand for it, if the others did" (the "others" being the insurer which did issue a policy to Law). This occurrence signifies that Scott either had authority

(which, as noted in our original opinion, he had assumed to use) to decide whether his company would write the additional insurance, or it was his duty to take and transmit (in the regular way) Law's application therefor. It indicates, too, that but for Scott's erroneous decisions (in the one event) or his failure of duty (in the other) Law would have secured from this company the protection desired. If Scott had power of decision, that authority included power to revoke his formerly expressed decisions and to grant Law's request. If his authority extended only to transmitting Law's request, his duty had not ended (because it had never been performed at all) at the time Law told him of the issuance of a policy by another company.

We adhere to the holdings that Scott's acquisition of information was within his agency and, thus, imputed to his principals, and that his principal became estopped.

We recommend that the motion be overruled.