# LEE v. MUTUAL PROTECTIVE ASS'N OF TEXAS.

## No. 943.

Court of Civil Appeals of Texas. Eastland.
Jan. 29, 1932.

Rehearing Denied March 4, 1932.

Tom F. Coleman and Curtis W. Fenley, both of Lufkin, for appellants.

Andrews, Streetman, Logue & Mobley, of Houston, Terry, Cavin & Mills, of Galveston, and Mantooth & Denman and J. J. Collins, all of Lufkin, for appellees.

Bouldin & Zivley, of Mineral Wells, for appellant.

G. R. Lipscomb, of Fort Worth, and J. T. Ranspot, of Mineral Wells, for appellee.

FUNDERBURK, J.

N. P. Lee, son of Mrs. Adline Lee, had certain negotiations with R. W. Bradford, a soliciting agent for Mutual Protective Association of Texas, hereinafter called the association, relative to his mother becoming a member of the association and thereby having the benefit of the life insurance provided for members. Bradford had authority to sell insurance for said association, to take applications therefor, and send same to the association for approval. On December 13, 1930, he prepared an application for said Mrs. Adline Lee upon a blank form provided for such purpose, in which one question was: "Are you in good health as far as you know and believe?" After N. P. Lee had informed the agent, in answer to that question, that his mother was not in good health, and that she was in bed part of the time, said agent wrote as the answer to the question: "In bed part of the time." The application named N. P. Lee as beneficiary. It was unsigned. The day it was prepared it was transmitted by mail to the association. Before it was transmitted, however, the above answer was erased and the word "Yes" written instead—a change of which N. P. Lee knew nothing. A certificate dated December 29, 1930, and based upon the application, was issued, delivered to, and accepted by, Mrs. Lee within the next two or three days thereafter. The certificate contained provisions as follows:

"This membership certificate is based upon the application of said member, which application is filed in the branch office of this association, and same, together with the constitution and by-laws of this association, is made a part hereof. * * *

"It is agreed that the above named beneficiary shall not be entitled to any sum hereunder unless said member * * * has not untruthfully answered any questions or made any untruthful statements in the application upon the faith of which this certificate is issued, said statements in said application being expressly made a part hereof. * * *

"This association shall not be liable for any claim under the terms of this certificate unless the certificate actually shall have been delivered to the herein named member while said member is alive and in good health."

Mrs. Lee was not in good health when the

certificate was delivered, and she died about the 18th day of January, 1931.

N. P. Lee brought this suit to recover upon the certificate. The association defended on the ground (to name only the one sustained by the court) that, by reason of the provision of the certificate last quoted and the fact that Mrs. Lee was not in good health when the certificate was delivered, it was not liable. The plaintiff pleaded waiver and estoppel, based upon alleged knowledge of the association that Mrs. Lee was not in good health, the delivery of the policy with such knowledge, and the collection of the dues therefor. Upon a nonjury trial the court gave judgment for the association. Conclusions of fact and law upon which the judgment was based were filed. One conclusion of fact was as follows: "The court finds that the defendant company, through its agent, R. W. Bradford, knew at the time the application was made and filed, that Mrs. Adline Lee was in bad health and in bed a part of the time. The court finds that, at the time the application for insurance was made, and at the time the certificate was delivered to the said Mrs. Adline Lee, that she was not in good health and that the company had no knowledge of her health at the time said policy was delivered other than what Bradford learned when he took said application."

The plaintiff has appealed.

■■ The above-quoted finding is ambiguous. By interpreting it most favorably to the judgment, it should, we think, be held to mean that the association had such knowledge and only such knowledge of the fact that Mrs. Lee was not in good health and was in bed part of the time, as was imputable to it by the knowledge of such facts acquired by Bradford in the preparation of the application.

■ Unless the association waived or was estopped to claim the advantage of the provision of the certificate relied upon to defeat recovery, there can be no question as to the correctness of the judgment. It is just as certain under the decisions that, if the association had knowledge of the fact that Mrs. Lee, at the time the certificate was delivered to her, was not in good health, or (what we construe to be the same thing) was in such state of health as required her to be in bed part of the time, its act in delivering the policy with such knowledge, and collecting the dues thereon, renders said provision in the certificate as against the pleas of waiver and estoppel unavailable as a defense. We need not stop to inquire whether such defense be accurately denominated a "waiver" or an "estoppel." Neither would it serve any useful purpose to speculate or theorize upon how such a rule may be harmonized, if it can, with the rule which forbids a written

contract to be contradicted by proof of prior or contemporaneous negotiations or agreements. See 16 L. R. A. (N. S.) 1213, note.

In Liverpool & L. & G. Ins. Co. v. Ende, 65 Tex. 118, the Supreme Court, approved, as a rule or principle of law, a statement from May on Insurance, as follows: "To deliver a policy with full knowledge of facts upon which its validity may be disputed, and then to insist upon these facts as ground of avoidance, is to attempt a fraud. This the courts will neither aid nor presume, and when the alternative is to find this or to find that, in accordance with honesty and fair dealing, there was an intent to waive the known ground of avoidance, they will choose the latter. Such an issue is tantamount to an assertion that the policy is valid at the time of delivery, and is a waiver of the known ground of invalidity." "The insurer is estopped from setting up the breach of any condition of the policy when at the time of its issue it knew that the condition was inconsistent with the facts, and the assured has been guilty of no fraud." Id. Corpus Juris states the rule as follows: "The issuance of the policy by the company is, according to the generally accepted rule, a waiver of a known ground of invalidity, and equivalent to an assertion that the policy is valid at the time of its delivery, although the facts known to the company would, under the express terms of the agreement, render it void or voidable, at least where the acts of insured are not fraudulent or insured does not know that the agent has exceeded his authority." 32 C. J. 1343.

As supporting the principle stated in the text, see: Continental Ins. Co. v. Cummings et al., 98 Tex. 115, 81 S. W. 705; Wagner & Chabot v. Westchester Fire Ins. Co., 92 Tex. 549, 50 S. W. 569; Aetna Ins. Co. v. Holcomb, 89 Tex. 404, 34 S. W. 915; Crescent Ins. Co. v. Camp, 71 Tex. 503, 9 S. W. 473; Camden Fire Ins. Ass'n v. Sutherland (Tex. Com. App.) 284 S. W. 927; National Fire Ins. Co. v. Carter et al. (Tex. Com. App.) 257 S. W. 531; St. Paul Fire & Marine Ins. Co. v. Kitchen (Tex. Com. App.) 271 S. W. 893; Southern Underwriters v. Jones (Tex. Civ. App.) 13 S.W.(2d) 435 (writ refused); Law v. Texas State Mutual Fire Ins. Co. (Tex. Com. App.) 12 S.W.(2d) 539; Id. (Tex. Com. App.) 16 S.W.(2d) 277; Dossett v. Franklin Life Ins. Co. (Tex. Com. App.) 276 S. W. 1097; American Nat. Ins. Co. v. Stevens (Tex. Civ. App.) 262 S. W. 833; Liverpool & L. & G. Ins. Co. v. Lester (Tex. Civ. App.) 176 S. W. 602; Western Assur. Co. v. Hillyer-Deutsch-Jarratt Co. (Tex. Civ. App.) 167 S. W. 816; Mecca Fire Ins. Co. v. Smith (Tex. Civ. App.) 135 S. W. 688; American Cent. Ins. Co. v. Chancey, 60 Tex. Civ. App. 61, 127 S. W. 577; Fire Ass'n of Philadelphia v. La Grange, etc., Co., 50 Tex. Civ. App. 172, 109 S. W. 1134; Sun Life Ins. Co. v.

Phillips (Tex. Civ. App.) 70 S. W. 603; German Ins. Co. v. Everett, 18 Tex. Civ. App. 514, 46 S. W. 95; Standard Life, etc., Co. v. Davis (Tex. Civ. App.) 45 S. W. 826; Hartford Fire Ins. Co. v. Moore, 13 Tex. Civ. App. 644, 36 S. W. 146; Phœnix Ins. Co. v. Ward, 7 Tex. Civ. App. 13, 26 S. W. 763.

It is believed to be immaterial in the present inquiry whether the provision of the certificate relied on to defeat recovery be a warranty or a condition precedent. "A warranty in the law of insurance consists of a statement by insured upon the literal truth of which the validity of the contract depends." 32 C. J. 1273. "A warranty in an insurance contract is a statement made therein by the assured, which is susceptible of no construction other than that the parties mutually intended that the policy should not be binding unless such statement be literally true." Phœnix Assur. Co. v. Munger, etc., Co., 92 Tex. 297, 49 S. W. 222, 225. "A condition precedent is a condition which must be performed" or must exist "before the contract of insurance becomes a valid operative contract, although it may have been made in form, executed and delivered." 32 C. J. 1276. The same authority, however, after pointing out distinctions between a warranty and a condition precedent, further says: "A warranty, however, is a condition precedent in the sense of that term as used to indicate a condition precedent to recovery upon the contract." Id., p. 1275.

Our purpose in giving the definitions of these terms is but to make clear what is meant when we say that the principles of waiver and estoppel already discussed apply to warranties and conditions precedent. "In the absence of statutory inhibition, as a general rule doctrines of waiver and estoppel may be applied to preclude the company from asserting *any* (italics ours) ground upon which it might be entitled to avoid the policy or dispute its liability thereunder." 32 C. J. 1316. "The rule that the company cannot take advantage of false answers placed in the application or policy by its agent applies, notwithstanding the statements are specifically made warranties." 32 C. J. 1334. On the subject of waiver of "conditions precedent," a note in 5 A. L. R. 1575, says: "It has been generally held that provisions in an insurance contract of a mutual benefit association stipulating that liability for benefits on the part of the insurer shall not attach unless the certificate or policy is delivered to the applicant while in good health, or unless he is in good health at the date of the policy or date of issuance, or unless he is in good health at the time of payment of the first premium, *are conditions precedent which may be waived by the insurer*." (Italics ours.)

Texas cases cited upon this proposition are: Home Circle Soc. v. Shelton (Tex. Civ.

App.) 81 S. W. 84; Sovereign Camp, W. O. W. v. Carrington, 41 Tex. Civ. App. 29, 90 S. W. 921; Home Forum Benev. Order v. Jones, 20 Tex. Civ. App. 68, 48 S. W. 219; Supreme Lodge United Benev. Ass'n v. Lawson, 63 Tex. Civ. App. 273, 133 S. W. 907; Home Forum Benev. Order v. Varnado (Tex. Civ. App.) 55 S. W. 364.

We now pass to the more difficult question of whether the court's findings show that the association had knowledge when the certificate was delivered that Mrs. Lee was not in good health. The existence of waiver or estoppel, it must be borne in mind, is dependent upon the existence of such knowledge. When the application was written, N. P. Lee, according to the court's findings, fully advised Bradford, the agent, that Mrs. Lee was not in good health, that she was in bed part of the time. In writing the answers to the questions in the application, Bradford certainly owed the duty to the association to correctly record such answers. This duty he performed. The applicant's agent, N. P. Lee, knew that he performed it. It is true, the answer was not written to say in the precise words that she was not in good health, but the answer that was written, namely, "in bed part of the time," in the particular connection could have had no other meaning. If there had been no change in this answer, could it be doubted that it conveyed sufficient knowledge to the association that Mrs. Lee was not in good health? In that case, no question would have arisen of whether notice to Bradford was notice to the association. The association would have had the actual information before it at the very time it wrote the certificate and for the very purpose of enabling it to determine if it would issue the certificate. The knowledge in such case would have been directly related to the warranty or condition. The court's findings fully acquit N. P. Lee of any improper relation to the transaction in which Bradford acquired the knowledge that Mrs. Lee was not in good health. Can the rights of the parties be affected by the fact that Bradford (since the evidence suggests no other) changed the answer without the knowledge of the insured or her agent, N. P. Lee? Subject to the qualification hereafter mentioned, the question is well answered, we think, by a note and supporting authorities in 16 L. R. A. (N. S.) 1233, as follows: "If the company's agent, in preparing the application, either by neglect, mistake, or fraud, without the knowledge of the insured, inserts false answers therein when correct replies were given by insured to the questions asked, the prevailing rule is that the fault of the agent must be borne by the company which sends him forth."

A further statement of this principle is found in L. R. A. 1915A, 274, note, as fol-

lows: "The great weight of authority is to the effect that if the agent of an insurance company, authorized to solicit insurance, either fraudulently or negligently inserts in the application false answers to questions correctly answered by the applicant, his wrong will be imputed to the company, and it will be estopped to defend an action on the policy upon the ground of the falsity of such answers, if the insured was unaware that his answers were incorrectly recorded."

Two Texas cases are cited as supporting the text: North American Accident Ins. Co. v. Trenton (Tex. Civ. App.) 99 S. W. 740; Supreme Lodge of the Fraternal Brotherhood v. Jones (Tex. Civ. App.) 143 S. W. 247.

Corpus Juris has this statement of the rule: "Where the fact is correctly stated by the applicant but a false answer is written into the application by the agent of the company without knowledge or collusion upon the part of the applicant, the company is, according to the generally accepted rule, bound." 32 C. J. 1290.

A qualification to the rule declared in the foregoing excerpts may be found in some cases of which Supreme Lodge, Knights & Ladies of Honor v. Payne, 101 Tex. 449, 108 S. W. 1160, 15 L. R. A. (N. S.) 1, will serve as an example. That qualification is to the effect that, even if the applicant answer truly and does not know that the agent has written the answer incorrectly, and even though he may not be negligent in ascertaining that the answers are incorrectly written, yet, if he warrant that the answers have been correctly written in the application as given, such warranty may preclude his showing, to support a claim of waiver or estoppel based upon such knowledge, that the insurer had knowledge of the real facts. But such qualification, if given its widest application, does not include a case within its operation where the answers are truthfully made and correctly written, but after that part of the transaction is closed the agent fraudulently or otherwise alters the answers in the application in a material way. Such an alteration would be a forgery, at least if the application was so signed and executed as certainly to be an instrument executed by the applicant. As shown in the statement of the case, the application was unsigned. However, the parties have made no point of that fact and we are making none, but it is mentioned as possibly qualifying the statement about forgery. We know of no principle of law that would justify the visiting of the consequences of a forgery committed by the insured's agent, in the undoubted scope of his employment, upon the insured, and thereby give the insurer the benefit of same to defeat a plea of waiver or estoppel by the insured who has been guilty of no wrong. A warranty of the correctness of the answers as written would have reference to the time the warranty was made, and not to a subsequent unauthorized alteration. It scarcely need be argued that a warranty, the legal effect of which was changed by forgery, would not bind the warrantor.

It only remains to consider whether knowledge to the association that on December 13th, when the application was made, Mrs. Lee was not in good health and was in bed part of the time, would be knowledge that, on or about December 29th thereafter, such was the condition of her health. The warranty or condition relied upon having, as it does, specific reference to the time the certificate was delivered, would protect the association if it had no knowledge that her health was not good at the very time the certificate was delivered. For example, it would be possible for an applicant to be in good health at the time of an application and yet be suffering from a fatal illness when the policy is delivered. In such a case a condition like the one in question would have full operation, and afford full protection from the consequences of the change in the insured's condition of health.

In the instant case the insured was in the same condition of health at the time the certificate was delivered as when the application was made. The question is, Did the association have knowledge of it? "The general rule is that notice to the agent is notice to the principal." Missouri, K. & T. Ry. Co. v. Belcher, 88 Tex. 549, 32 S. W. 518, 519. What does the word "agent" mean, as used in such statement of the general rule? Judge Denman, with characteristic clarity, answered that question immediately following the above quotation, as follows: "The word 'agent,' as used in this connection, means the person who has power to act for the principal with reference to the very subject-matter to which the notice relates, and does not include a person who has no such power, though he may have power to act for the principal with reference to similar subjects." Missouri, K. & T. Ry. Co. v. Belcher, supra. "It is a well settled general rule that a principal is affected with constructive knowledge, regardless of his actual knowledge, of all material facts of which his agent receives notice or acquires knowledge while acting in the course of his employment, and within the scope of his authority, although the agent does not, in fact, inform his principal thereof." 2 C. J. 859. A little different statement of the rule is: "Notice to an agent, when acting within the scope of his authority and in reference to a matter over which his authority extends, is notice to his principal." Security Mutual Life Ins. Co. v. Calvert (Tex. Civ. App.) 100 S. W. 1033, 1036; Law v. Texas State, etc., Ins. Co. (Tex. Com. App.) 12 S.W.(2d) 539; Id. (Tex. Com. App.) 16 S.W.(2d) 277; Southern Underwriters v. Jones (Tex. Civ. App.) 13 S.W.(2d) 435 (writ refused); American Nat. Ins. Co. v. Bailey (Tex. Civ. App.) 3

S.W.(2d) 539; Springfield Fire, etc., Co. v. Brown (Tex. Civ. App.) 13 S.W.(2d) 916; Springfield Fire, etc., Co. v. Whatley (Tex. Civ. App.) 279 S. W. 287; National Fire Ins. Co. v. Carter (Tex. Com. App.) 257 S. W. 531; Western Assur. Co. v. Hillyer-Deutsch-Jarrett Co. (Tex. Civ. App.) 167 S. W. 816; Northwestern Mutual Life Ins. Co. v. Freeman, 19 Tex. Civ. App. 632, 47 S. W. 1025; Morrison v. Ins. Co. of N. A., 69 Tex. 353, 6 S. W. 605, 5 Am. St. Rep. 63; Hibernia Ins. Co. v. Malevinsky, 6 Tex. Civ. App. 81, 24 S. W. 804; Southern Mutual Fire Ins. Co. v. Mazoch Bros. (Tex. Civ. App.) 291 S. W. 257; Crescent Ins. Co. v. Camp, 71 Tex. 503, 9 S. W. 473; German Ins. Co. v. Everett, 18 Tex. Civ. App. 514, 46 S. W. 95; Camden Fire Ins. Co. v. Wandell (Tex. Civ. App.) 195 S. W. 289; Equity Mutual Fire Ins. Co. v. Harrell (Tex. Civ. App.) 247 S. W. 678.

■ The question of notice now under consideration is not affected by any restrictions or limitations upon the agent's authority of which the insured or her agent may be chargeable with notice because of being recitations in the application or certificate. The issues of waiver or estoppel in this case are not predicated upon the theory that Bradford, the agent, waived anything or did any act to constitute an estoppel. It cannot be argued for a moment that Bradford had no authority to prepare and transmit applications. When he was told, in answer to one of the questions in the application, that Mrs. Lee was not in good health, it was a duty which he owed the association to so prepare the application that it would disclose such fact. It was his duty to transmit the application showing such fact. It is wholly beside the question to contend that Bradford had no authority to waive anything or to so act as to create an estoppel. The knowledge or act which, concurring with other facts, created the waiver or estoppel, if any, was not the knowledge or act of Bradford, but the knowledge of the association imputed to it by the knowledge of Bradford and the association's act in delivering the policy with such knowledge and collecting the dues. This distinction is pointed out in Law v. Texas State, etc., Ins. Co., supra. Notice to an applicant of restrictions or limitations upon the authority of the agent are effective to prevent the principal from being bound by acts or knowledge of such agent performed or acquired within the *apparent,* as distinguished from the *actual,* scope of his authority, but are no more effectual to prevent knowledge acquired in the actual scope of his authority from being the knowledge of the principal than would such knowledge given directly to the association's highest officers.

It would extend this opinion to an unreasonable length to attempt to discuss and distinguish the authorities relied upon by appellee. Of such cases the one apparently affording the most support for the judgment is Southern Surety Co. v. Benton (Tex. Com. App.) 280 S. W. 551, 552. In that case Benton, the applicant, knowing at the time that he had tuberculosis, answered a question in the application, and by such answer warranted that he was "in sound condition, mentally and physically." Nothing appeared in the application to indicate that he had "tuberculosis or other physical ailment." He agreed in the application that the policy to be issued (upon the faith of such false answer) would not become effective unless when same was delivered to him he was "in good health and free from the effects of any injury, disease or bodily infirmity." Of course, there was no waiver or estoppel in that case. Benton knew that the agent, in violation of his duty, was transmitting false information which would probably have the direct effect of causing the company to issue a policy it would not have issued had the correct information been furnished. Whether it be called fraud of the applicant, collusion between the applicant and the agent, or notice to the applicant that the agent had no authority to deceive and mislead his principal, the result is all the same. No plea of waiver or estoppel is supported when any such state of facts is shown.

In the instant case the applicant made truthful answers. She (through her agent) knew that the agent of the association wrote truthful answers in the application. She warranted the truthfulness of the answers as made and written. The agent was under the duty to the association to transmit those answers as made and written. The only reason the association did not have the benefit of the true facts when on December 29th it issued and delivered the policy was the breach of a duty on the part of its agent, for which the applicant was not responsible and which was covered by no warranty of the applicant to the association. The only way to visit the consequences of that breach of duty upon the insurer who "sent the agent out," rather than upon the insured who was at no fault, is to charge the association with the knowledge which it was the duty of its agent to give. The most there can be said of the opinion in the Benton Case is that, apparently, a different reason was given to support an action in entire consonance with our conclusions herein, but which reason is apparently inconsistent with the reasons which impel us to such conclusions.

■ Although there was a period of a little more than two weeks from the time application was made until the certificate was delivered, we think it would be making a too hypercritical distinction to say that the knowledge which we have concluded was imputable to the association did not extend to the time of the delivering of the certificate. Had the application been transmitted as writ-

ten, it is not reasonable to suppose that the association would any more have issued the certificate than it would if the information concerning the applicant's health had been that she was suffering from an internal cancer, which the evidence shows was the fact. The association delivered the certificate knowing that about two weeks before the insured was in such a state of health as required her to be in bed part of the time. It was put upon full inquiry that there may have been a fatal malady such as she had. To hold that the association had no knowledge of such fact would be, we think, to refuse to give application to the principles of waiver and estoppel discussed at length in the fore part of this opinion.

We have therefore concluded that the trial court erred; that judgment should have been given for appellant; that therefore the judgment of the trial court should be reversed, and judgment here rendered for appellant, which is accordingly so ordered.